ESTATE OF ROSE D. HOWARD, DECEASED, ROGER W. A. HOWARD, VOLNEY E. HOWARD III, ALANSON L. HOWARD, ROBERT L. BRINER, TRUSTEES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9208-87.          Filed August 23, 1988.

*William W. Sumner,* for the petitioner.
*James W. Clark,* for the respondent.

OPINION

TANNENWALD, *Judge:* Respondent determined a deficiency in petitioner's Federal estate tax of $673,884.43. The issue for decision is whether a trust for which an election had been made under section 2056(b)(7)[1] relating to the marital deduction for qualified terminable interest property, was a qualified terminable interest property trust so as to be includable in decedent's estate.[2]

The facts have been fully stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Petitioner is the Estate of Rose D. Howard. Rose D. Howard is hereinafter referred to as "decedent." Decedent died testate on February 11, 1984. She was a resident of California at the time of her death. All of the assets of petitioner passed in trust.

Decedent was married to Volney E. Howard, Jr. (Howard), at the time of his death on April 24, 1983. Included in Howard's gross estate for Federal estate tax purposes was the value of a trust which he and decedent had previously established and which is the trust involved herein.[3]

Under the terms of the trust, the income was payable to decedent quarter-annually or at more frequent intervals. The trust instrument further provided: "Income accrued or held undistributed by the Trustee at the termination of any

---

[1]All section references are to the Internal Revenue Code as amended and in effect at the relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]This will, in turn, establish whether petitioner is entitled to a credit for taxes paid on previously transferred property under sec. 2013. Petitioner did not dispute respondent's determinations as to the value of several assets in the gross estate or of the amount of adjusted taxable gifts.

[3]Roger W.A. Howard, Volney E. Howard III, Alanson L. Howard, and Robert L. Briner are the duly qualified and presently acting trustees of the trust and resided in California at the time the petition herein was filed.

interest shall go to the next beneficiaries of the trust in proportion to their interests in the trust."

Except for a noncumulative right to withdraw a portion of principal of the trust annually, decedent had no power of disposition over the principal or the above-described income.

On January 24, 1984, Howard's estate filed a Federal estate tax return and elected to treat the trust as a qualified terminable interest property trust (QTIP trust), and claimed a marital deduction for the value of the trust property. On July 3, 1984, Howard's estate filed an amended Federal estate tax return, on which it claimed that the trust was not a QTIP trust and therefore not eligible for the marital deduction. The additional tax shown to be due thereon was assessed and paid.

A Federal estate tax return was filed for decedent's estate on November 13, 1984. Except for a figure purporting to be the value of decedent's right of withdrawal, that return did not include the value of the assets of the trust in the gross estate. That return also showed a credit for tax on prior transfers, which included a credit in respect of the value of the trust property which had been included in Howard's estate for Federal estate tax purposes.

Section 2001 imposes a tax on the transfer of the taxable estate of all citizen and resident decedents. Section 2051 defines taxable estate as the gross estate less deductions. "The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death." Sec. 2033. Among the property included in the gross estate is qualified terminable interest property for which a marital deduction was allowed under section 2056(b)(7). Sec. 2044.[4]

Under certain conditions, section 2056 allows a deduction from the gross estate for the value of property passing to the surviving spouse. Sec. 2056(a). If the spouse's interest in the property is a terminable interest, that is, it will

---

[4]Sec. 2044 provides, in relevant part:

SEC. 2044(a). GENERAL RULE.—The value of the gross estate shall include the value of any property to which this section applies in which the decedent had a qualifying income interest for life.

(b) PROPERTY TO WHICH THIS SECTION APPLIES.—This section applies to any property if—

(1) a deduction was allowed with respect to the transfer of such property to the decedent—

(A) under section 2056 by reason of subsection (b)(7) thereof * * *

terminate either on the lapse of time (for example, a life estate) or the occurrence or nonoccurrence of an event, generally no deduction is allowed. Sec. 2056(b)(1). If, however, the property is qualified terminable interest property, a deduction for its value is allowed. See sec. 2056(b)(7)(A).

Section 2056(b)(7)(B), which defines qualified terminable interest property, provides, in pertinent part:

(B) * * * For purposes of this paragraph—
  (i) IN GENERAL.—The term "qualified terminable interest property" means property—
  (I) which passes from the decedent,
  (II) in which the surviving spouse has a qualifying income interest for life, and
  (III) to which an election under this paragraph applies.
  (ii) QUALIFYING INCOME INTEREST FOR LIFE.—The surviving spouse has a qualifying income interest for life if—
  (I) the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, * * * and
  (II) no person has a power to appoint any part of the property to any person other than the surviving spouse.

> \* \* \* \* \* \* \*

  (v) ELECTION.—An election under this paragraph with respect to any property shall be made by the executor on the return of tax imposed by section 2001. Such an election, once made, shall be irrevocable.

Resolution of the issue before us depends upon the meaning of "qualified income interest for life," specifically, whether an instrument directing that the income of a trust that has been accumulated but not distributed at the date of the surviving spouse's death pass to someone other than the surviving spouse's estate creates such an interest. To have a "qualified income interest for life," the surviving spouse must have been "entitled to all the income from the property, payable annually or at more frequent intervals." Sec. 2056(b)(7)(B)(ii)(I). Petitioner argues that, under that definition, there are two separate requirements which must be met for an income interest to be a qualified income interest: (1) The surviving spouse must be entitled to all the income, and (2) distributions of income must be made at least annually. Accordingly, petitioner concludes that the trust does not meet these requirements because the remainder beneficiaries of the trust and not petitioner were entitled to the income that had accumulated at decedent's

death. Respondent argues that it is sufficient to satisfy the requirements of a qualified income interest if all payments of income required under the trust instrument during the surviving spouse's lifetime are made to the surviving spouse—that is, that the words "payable annually or at more frequent intervals" simply limit the word "all" and do not constitute a separate requirement.

If petitioner is correct, and decedent's income interest did not qualify, then the trust is not a QTIP trust and is not includable in decedent's gross estate under section 2044. If respondent is correct, the trust is a QTIP trust and is includable in decedent's gross estate. We agree with petitioner.

At the outset, we deal with certain portions of respondent's argument which create what we consider to be smokescreens that simply befog the straightforward issue herein. Woven throughout respondent's brief is his contention that petitioner is merely trying to revoke the original election to treat the trust as a QTIP trust. We note that this election, which was made by Howard's estate, would not be petitioner's to revoke even if it were revocable. See sec. 2056(b)(7)(v). In any event, we do not think that petitioner is seeking to revoke the election. Section 2056(b)(7) sets out three requirements for "qualified terminable interest property." The election is only one of them. Petitioner is arguing that another of them has not been met. Respondent's argument misses the essential point that, if the trust was never a QTIP trust, the election to treat it as such was not valid. In a similar vein, we ignore respondent's mathematical analysis in which he endeavors to show that the combined tax savings in respect of the estates of Howard and decedent if the trust is not a QTIP trust, because decedent's death occurred far earlier than anticipated when the estate tax return for Howard's estate was filed, were the primary motivation for petitioner's position. Mathematics—and particularly mathematics based on chance—are irrelevant to the resolution of the issue before us, namely, the proper interpretation of the governing statutory provisions.

Turning to a consideration of that issue, we think that petitioner's is the more reasonable reading of the statute.

While "payable annually" may be seen as limiting the amount of income to which the surviving spouse must be entitled for an income interest to be qualified, a less strained reading of the statute leads to the conclusion that the words create a separate requirement that the income interest must meet. This reading gives ordinary meaning to both "all" and "payable annually," which respondent's interpretation, limiting "all" to something less than that, would not. Were we to limit the word "all" as respondent suggests, the meaning of the statute would, in effect, be changed to require "at least annual distributions of all income accumulated to the time of the distribution" for the income interest to qualify. Had Congress intended that result, this wording would have been a much clearer manner of achieving it.

The legislative history of section 2056(b)(7) does not deal expressly with the meaning of "payable annually." See H. Rept. 97-201, at 161 (1981), 1981-2 C.B. 352, 378.[5] Such being the case, we must look to other sources for guidance. One source is another statutory provision using the same language, since the general rule is that words used in different parts of the same statute should be accorded the same meaning. See *Sorensen v. Secretary of the Treasury,* 475 U.S. 851, 860 (1986). We think section 2056(b)(5), which contains nearly identical language with that of section 2056(b)(7), constitutes such a source, particularly since both paragraphs have the same objective, namely, defining the conditions under which dispositions of property will qualify for the marital deduction.

Section 2056(b)(5) allows a deduction for a life estate passing to a surviving spouse, provided that "the surviving spouse is entitled for life to all the income from the  * * * interest * * * , payable annually or at more frequent intervals" and that the surviving spouse has the power to appoint the interest to such spouse or the spouse's estate. That paragraph, which was initially limited to interests in trusts, was enacted as part of the Revenue Act of 1948. See ch. 168, sec. 361(a), 62 Stat. 110, 117. Its legislative history supports petitioner's reading of the term "payable annu-

---

[5]See also S. Rept. 97-144, at 126-128 (1981), 1981-2 C.B. 412, 461-462; H. Rept. 97-215 (Conf.), at 247 (1981), 1981-2 C.B. 481, 507.

ally." That history indicates that several conditions must be met for property transferred in trust to be eligible for the marital deduction, including, as two separate requirements, that the surviving spouse be entitled to all the income of the trust during his life and that the income be payable at least annually. S. Rept. 1013 (Part 2), 80th Cong., 2d Sess. 16-17 (1948), 1948-1 C.B. 285, 342-343.

Furthermore, the legislative history of section 2056(b)(7) clearly indicates that "qualified terminable interest property" must meet the requirements of section 20.2056(b)-5(f), Estate Tax Regs. See H. Rept. 201, *supra* at 161, 1981-2 C.B. at 378; Staff of Joint Comm. on Taxation, General Explanation of the Economic Recovery Tax Act of 1981, at 435 (Comm. Print 1981). Section 20.2056(b)-5(f)(8), Estate Tax Regs., provides, in relevant part, that:

as respects the income for the period between the last distribution date and the date of the spouse's death, it is sufficient if that income is subject to the spouse's power to appoint. Thus, if the trust instrument provides that income accrued or undistributed on the date of the spouse's death is to be disposed of as if it had been received after her death, and if the spouse has a power of appointment over the trust corpus, the power necessarily extends to the undistributed income.

Respondent argues that, under this regulation, there is no requirement that the accumulated income be distributed. While the regulation does not explicitly cover the need for such a distribution, we think that it sets forth a narrower standard, namely, that such income must be disposed of as the surviving spouse directs. If such income is directed to be distributed to the estate of the surviving spouse, such disposition would automatically occur and the specific grant of a power of appointment would be unnecessary. If distribution is not so directed, then a power of appointment becomes necessary to meet the requisite requirement that the surviving spouse be entitled to all of the income.[6]

Respondent argues that one other piece of legislative history supports his reading of the statute. In 1982, section 2056(b)(7) was extended so that contributions to pooled

[6]Petitioner argues that, because decedent did not have a power of appointment over the income, the trust does not qualify under this regulation. Again, we believe that a narrower reading is in order. The regulation states that such a power to appoint is sufficient, it does not state that the instrument must specifically grant such a power for the trust to qualify.

income funds[7] could qualify as qualified terminable interest property. See Technical Corrections Act of 1982, Pub. L. 97-448, sec. 104(a)(8), 96 Stat. 2365, 2381. The legislative history of that amendment states: "In determining whether such property qualifies as QTIP property, the fact that the income payments terminate on the last required regular payment date before the death of the beneficiary spouse, shall not cause the spouse's interest to fail to be a qualified income interest." S. Rept. 97-592, at 20-21 (1982), 1983-1 C.B. 475, 483. Respondent argues that this is an application of the general rule that the surviving spouse need not be entitled to the income accumulated from the last distribution date to the date of death. We think that it is a limited exception to the general rule that the surviving spouse must be entitled to, or have the power of disposition over, such income. Pooled income funds are different from ordinary trusts; in particular, a pooled income fund cannot be tailored by the taxpayer to meet his or his family's individual needs, and a pooled income fund, which deals with a large number of individual beneficiaries, would not necessarily have the ability to calculate the income that should be distributed to any one of the income beneficiaries at any given time. Thus, without a special rule for income distributions, extending the qualified terminable interest rules to such funds would have run counter to the practicalities of the situation. Finally, it would seem that the fact that Congress found it necessary to deal explicitly with distributions from pooled income funds implies that Congress believed that a contrary rule would apply under other circumstances.

Respondent also argues that petitioner's reading of the statute is inconsistent with Congress's intention to omit the power of appointment requirement that is in section 2056(b)(5) from section 2056(b)(7). While it is true that section 2056(b)(7) does not require a power of appointment over the principal amount of the property, it does require essentially the same treatment of income for the life of the surviving spouse as section 2056(b)(5). It is clear that only

[7] A pooled income fund is a trust held by a public charity to which the donor makes a contribution, retaining a life interest in the earnings thereof with the remainder to the public charity. See sec. 642(c)(5).

the requirement as to the power to appoint the principal of the property was changed, not the requirements as to the income from that property. Thus, the continued requirement of a power of disposition in the surviving spouse over income accumulated but undistributed at death is not inconsistent with the elimination of the requirement of the power of appointment over principal.

We are similarly unpersuaded by the fact that respondent's position is consistent with proposed regulations, which state "an income interest will not fail to constitute a qualifying income interest for life solely because income between the last distribution date and the date of the surviving spouse's death is not required to be distributed to the surviving spouse or the surviving spouse's estate." Sec. 20.2056(b)-7(c)(1), Prop. Estate Tax Regs., 49 Fed. Reg. 21,351 (1984). Respondent does not contend that this proposed regulation controls our interpretation of the statute. In any event, proposed regulations are not entitled to judicial deference, and carry no more weight than a position advanced on brief. *Laglia v. Commissioner*, 88 T.C. 894, 897 (1987); *Scott v. Commissioner*, 84 T.C. 683, 690 (1985).

We are not unmindful that our approach herein imposes a high standard of precision in the drafting of trust instruments. But more than 20 years ago, the Supreme Court observed that "the device of the marital deduction which Congress chose * * * was knowingly hedged with limitations" and that "these provisions [the marital deduction provisions] may be imperfect devices to achieve the desired ends." *Jackson v. United States*, 376 U.S. 503, 510 (1964). See also *Allen v. United States*, 359 F.2d 151, 153 (2d Cir. 1966) (Congress "chose a technique which required the draftsmen of testamentary instruments to be meticulous in adhering to the formal requirements of section 2056"); *Estate of Nachimson v. Commissioner*, 50 T.C. 452, 458 (1968). We are not persuaded that the interpretation of the provisions of section 2056(b)(7), relating to QTIP trusts, should not fall within the ambit of this approach.

Finally, respondent's position herein seems to be founded on bootstrap reasoning, namely, that if there is a QTIP election under section 2056(b)(7), the QTIP trust is includable in the gross estate of the surviving spouse; therefore, the

QTIP election must be valid. Such a rationale is directly contradicted by the approach articulated in respect of section 2056(b)(5), namely, that the mere fact that property passing from the decedent would be includable in the gross estate of the surviving spouse does not necessarily entitle the decedent's estate to a marital deduction; the explicit requirements of section 2056(b)(5) must still be met. *Estate of Meeske v. Commissioner*, 72 T.C. 73, 78 (1979), affd. sub nom. *Estate of Laurin v. Commissioner*, 645 F.2d 8 (6th Cir. 1981). Particularly in light of the nearly identical language of section 2056(b)(7) and section 2056(b)(5), we think this approach supports the thrust of our holding herein.

We hold that, in order for a trust to satisfy the requirements for a QTIP trust under section 2056(b)(7), the income accumulated by the trust between the last date of distribution and the surviving spouse's death must be disposed of as the surviving spouse directs either by virtue of being payable to the surviving spouse's estate[8] or through a power of appointment which includes a power to appoint to her estate or to such other persons as she may direct.[9] The trust involved herein where the trust instrument explicitly directs that such accumulated income be distributed to the remainder beneficiaries, simply does not meet that standard.[10]

In view of our holding that the trust involved herein did not qualify as a QTIP trust for purposes of the marital deduction by Howard's estate and in view of the fact that Howard's estate paid the estate tax resulting from such nonqualification (see page 331 *supra*), petitioner is entitled to a credit for taxes paid on a prior transfer under section 2013.[11]

---

[8]Presumably this disposition could be either in accordance with a provision in the trust instrument or through the operation of State law, if the instrument is silent or unclear as to whether this result should obtain. Cf. *Estate of Tilyou v. Commissioner*, 470 F.2d 693 (2d Cir. 1972), revg. 56 T.C. 1362 (1971).

[9]We note that although only 3 months of undistributed income could be involved herein, as much as 12 months of income could be involved in a trust that would have a qualified income interest under the statutory interpretation for which respondent contends.

[10]See Willis, "QTIP Proposed Regulations require careful drafting approaches to maximize flexibility," 13 Taxation for Lawyers 373, 376 (1985).

[11]That section provides: "The tax imposed by section 2001 shall be credited with all or a part of the amount of the Federal estate tax paid with respect to the transfer of property * * * to the decedent by or from a person * * * who died within 10 years before * * * the decedent's death." Sec. 2013(a). See note 2 *supra*.

To reflect the foregoing and other items subject to an agreed stipulation of the parties,

*Decision will be entered under Rule 155.*