ESTATE OF HERBERT R. CAVENAUGH, DECEASED, WM. MONROE KERR, INDEPENDENT ADMINISTRATOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 24321-90.          Filed May 13, 1993.

*Wm. Monroe Kerr* and *A. M. Nunley III,* for petitioner.
*Steve Brower,* for respondent.

BEGHE, *Judge:* Respondent determined a deficiency of $215,075 in petitioner's Federal estate tax and an addition to tax of $43,015 under section 6651(a)(1) for late filing of the Federal estate tax return.

Unless otherwise noted, all section references are to the Internal Revenue Code in effect as of the date of Herbert R. Cavenaugh's death, and all Rule references are to the Tax Court Rules of Practice and Procedure. All references to petitioner are to the Estate of Herbert R. Cavenaugh.

After concessions by the parties, the following questions remain for decision:

(1) Whether petitioner erroneously excluded from the gross estate of Herbert R. Cavenaugh (Dr. Cavenaugh) property that passed to him from his predeceased first wife Mary Jane Stephens Cavenaugh (Mrs. Cavenaugh), for which he, as executor of her estate, had elected to claim a marital deduction for qualifying terminable interest property under section 2056(b)(7);

(2) whether petitioner erroneously excluded from Dr. Cavenaugh's gross estate one-half the death benefit paid to petitioner as named beneficiary of a term life insurance policy on his life that had been taken out during the lifetime of Mrs. Cavenaugh; and

(3) whether petitioner is liable for an addition to tax under section 6651(a)(1) for late filing of the Federal estate tax return.

We answer these questions in the affirmative, thereby adopting each of respondent's determinations.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Dr. Cavenaugh was a practicing physician who resided in Midland, Texas, when he died on May 15, 1986. Surviving Dr. Cavenaugh were his second wife, Cindy Evon Gwin Cavenaugh (Cindy Cavenaugh), and his three sons by Mrs. Cavenaugh: Herbert R. Cavenaugh, Jr., James S. Cavenaugh, and John W. Cavenaugh. When the petition in this case was filed, Wm. Monroe Kerr, petitioner's independent administrator, resided in Texas.

Mrs. Cavenaugh was married to Dr. Cavenaugh when she died on July 31, 1983. The Cavenaughs[1] had been married for more than 25 years at the time of Mrs. Cavenaugh's death. When Mrs. Cavenaugh died, and for many years prior to her death, the Cavenaughs had resided in Texas, a community property State.

*Term Life Insurance Policy*

On August 17, 1980, the Cavenaughs purchased, from New England Mutual Life Insurance Co. (New England Mutual), a $650,000 face amount term life insurance policy (the policy). The policy provided that New England Mutual would pay the face amount to the named beneficiary on receipt of proof of Dr. Cavenaugh's death. The policy had a 1-year term and could be renewed automatically, by annual payments of increasing premiums, to a final expiration date of August 17, 2001. The policy also could be converted to "permanent insurance", at the Cavenaughs' option, any time prior to its anniversary date nearest Dr. Cavenaugh's 65th birthday.

The policy had no cash value or loan value. However, the policy did provide for an annual dividend to be determined each year by New England Mutual and credited to the policy. Dividends, at the Cavenaughs' election, could be paid in cash, used to reduce premiums, or held and accumulated by New England Mutual for the benefit of the Cavenaughs or the beneficiary of the policy. Accumulated dividends would bear interest, the rate to be determined each year by New England Mutual, but not less than 3.5 percent per year compounded yearly. The Cavenaughs were permitted to withdraw the accumulated dividends at any time with the balance to be paid, at the policy's termination, to the Cavenaughs or the named beneficiary.

Dr. Cavenaugh renewed the policy, either joined by Mrs. Cavenaugh or individually, each year until his death on May 15, 1986. On August 27, 1985, the face amount of the policy having been increased to $750,000 at some unspecified prior time, Dr. Cavenaugh filed an application with New England Mutual to reduce the face amount of the policy from $750,000 to $650,000. The policy had a face amount of $650,000 at Dr. Cavenaugh's death on May 15, 1986.

---

[1] All references to the Cavenaughs are to Dr. Cavenaugh and Mrs. Cavenaugh.

Petitioner was the named beneficiary of the policy from at least August 27, 1985, until it terminated with Dr. Cavenaugh's death. On October 20, 1986, New England Mutual paid petitioner, as the named beneficiary of the policy, a death benefit of $654,160.62. The death benefit consisted of the policy's face amount of $650,000, post mortem dividends of $3,367.87, and a return of unused premium of $792.75.

## Mrs. Cavenaugh's Will

On October 2, 1980, Mrs. Cavenaugh executed her last will and testament. In that will, Mrs. Cavenaugh named Dr. Cavenaugh and Midland National Bank, Midland, Texas (Midland National Bank), or its successor, independent executor and successor independent executor of her estate, respectively. Midland National Bank, or its successor, also was named trustee of the residuary trust under the will.

The bulk of Mrs. Cavenaugh's estate was to be held in trust by Midland National Bank, as trustee, for the benefit of Dr. Cavenaugh during his life, and then for the benefit of the Cavenaugh children. However, Mrs. Cavenaugh's will also provided for specific transfers to Dr. Cavenaugh of various interests in real property. Among such interests was a life estate in Mrs. Cavenaugh's community interest in the family home, which interest was valued on her Federal estate tax return at $185,000.[2] Article III of Mrs. Cavenaugh's will provided that

it is my will that my husband, so long as he lives, shall have the full use and occupancy without any charge or obligation whatsoever of my interest in our family homestead in Midland, Midland County, Texas, or any other home bought out of the product [sic] thereof, as hereinafter provided. My Trustee * * *, and my beloved husband, shall have the power to sell said home, or other home acquired with the product [sic] thereof, and in the event of such sale, the proceeds of such sale, or so much thereof as said Trustee determines necessary or appropriate for the purpose shall be invested by the .Trustee in another home; but if my husband shall not desire the reinvestment of such proceeds in such substitute home, then my interest in the proceeds of such sale shall be and become part of the residue of my estate and shall be governed by the provisions respecting the

_____
[2] Mrs. Cavenaugh purportedly gave, in Art. II of her will, the family home to Dr. Cavenaugh in absolute fee simple. However, the parties agree that Mrs. Cavenaugh's interest in the family home passed to Dr. Cavenaugh as a life interest under Art. III of her will, with remainder to the residuary trust.

residue of my estate * * *. I hereby direct that my Trustee * * * cooperates [sic] fully in permitting my said husband's full enjoyment thereof.

Mrs. Cavenaugh also transferred to Dr. Cavenaugh, in Article IV of her will, a life estate in her community interests in other real property, including mineral interests, which were assigned an aggregate value of $305,672.30 on her Federal estate tax return. With respect to these transferred property interests, Mrs. Cavenaugh's will provided, in pertinent part of Article IV, that

Under no circumstances is it my intent to invest in my said husband, nor shall he have, any right or power which would ever enlarge his interest in any of the property referred to herein beyond that of a life tenant, or which would or should ever be construed to be such as to cause the principal or corpus of any of such property to be includable in the estate of my said husband for either Federal estate or state inheritance tax purposes at the time of her [sic] death.

In Article V of her will, Mrs. Cavenaugh gave the residue of her estate to Midland National Bank as trustee of the residuary trust. Paragraph B of Article V of Mrs. Cavenaugh's will directed her trustee to pay Dr. Cavenaugh, during his lifetime, the net income of the residuary trust. Paragraph B of Article V of the will also provided that the payments thereunder should be made "monthly or at the end of such other periods as may be necessary or desirable in the discretion of the Trustee." Paragraph D of Article V of the will provided Dr. Cavenaugh a noncumulative right to withdraw, in any calendar year, from the corpus of the residuary trust the greater of $5,000 or 5 percent of the market value of the principal.

*Events After Mrs. Cavenaugh's Death*

On August 23, 1983, the Midland County Court admitted Mrs. Cavenaugh's will to probate. The Midland County Court, pursuant to Article VII of the will, appointed Dr. Cavenaugh executor of Mrs. Cavenaugh's estate. Dr. Cavenaugh did not notify the Midland National Bank, or its successor in interest, First City National Bank of Midland, that it had been named trustee of the residuary trust under the will.

Although Dr. Cavenaugh was the executor of Mrs. Cavenaugh's estate for almost 3 years, the community assets were not partitioned or distributed during this time. However, a few months after Mrs. Cavenaugh's death, Dr. Cavenaugh sold the Cavenaugh family home, without joining or notifying Midland National Bank or its successor. Dr. Cavenaugh reinvested the sales proceeds in another house and a $60,000 interest-bearing promissory note.

Dr. Cavenaugh, as executor of Mrs. Cavenaugh's estate, hired Robert J. Kaufman, a certified public accountant, to prepare Federal estate and Texas inheritance tax returns for Mrs. Cavenaugh's estate. Dr. Cavenaugh told Mr. Kaufman that his primary concern was to reduce to zero Mrs. Cavenaugh's estate and inheritance tax liabilities.

Mrs. Cavenaugh's Federal estate tax return prepared by Mr. Kaufman claimed no unified credit against estate tax. However, Dr. Cavenaugh elected to claim a marital deduction for all qualified terminable interest property (QTIP) under section 2056(b)(7). Schedule M of Mrs. Cavenaugh's estate tax return included the following statement: "The entire net estate passes directly to the surviving spouse under paragraph II of the will of the decedent or is deemed to pass to the surviving spouse under paragraphs IV and V by election under section 2056(b)(7)." The QTIP election was not contested by respondent.

As a result of the marital deduction for property passing directly to Dr. Cavenaugh and the QTIP election, Mrs. Cavenaugh had a zero taxable estate and her estate paid no Federal estate tax. Even if a unified credit against estate tax had been claimed, the estate of Mrs. Cavenaugh would have had a Federal estate tax liability in the absence of a QTIP election for at least some of the property interests passing to Dr. Cavenaugh under Articles III, IV, and V of her will. Notwithstanding the foregoing, at the time of trial in this case, Mr. Kerr, as independent administrator of Dr. Cavenaugh's estate, had filed suit against Mr. Kaufman in Texas, alleging that Dr. Cavenaugh's gross estate had been increased unnecessarily because Mr. Kaufman had advised Dr. Cavenaugh to make a QTIP election on Mrs. Cavenaugh's estate tax return without exhausting the estate's right to the unified credit.

Approximately 4 months after the death of Mrs. Cavenaugh, Dr. Cavenaugh married Cindy Cavenaugh. In November 1983 or 1984, Dr. Cavenaugh executed a document that purported to be his last will and testament. That document purported to transfer Dr. Cavenaugh's entire estate to Cindy Cavenaugh and to name her executrix of the estate.

## Dr. Cavenaugh's Estate

Following the death of Dr. Cavenaugh on May 15, 1986, Cindy Cavenaugh offered his purported will for probate in the Midland County Court. The Cavenaughs' three sons, John W. Cavenaugh serving as next friend of his minor brothers, contested this offer for probate, contending that Dr. Cavenaugh had executed the document under Cindy Cavenaugh's undue influence.

The Midland County Court appointed First Republic Bank, Midland, N.A., temporary administrator of Dr. Cavenaugh's estate pending the conclusion of the probate proceedings. First Republic Bank, as temporary administrator of Dr. Cavenaugh's estate, requested and received a 6-month extension of time, from February 15, 1987, until August 15, 1987, to file petitioner's estate tax return.

On June 8, 1987, Cindy Cavenaugh, the Cavenaugh children, and First City National Bank of Midland, as successor executor of Mrs. Cavenaugh's estate, entered into a will contest settlement agreement subject to the approval of the Midland County Court. On August 6, 1987, the parties to the agreement filed an application for orders with the Midland County Court, requesting, in pertinent part, that the Court (1) approve the June 8, 1987, will contest settlement agreement, (2) deny probate to the purported will that Cindy Cavenaugh had offered for probate, (3) declare that Dr. Cavenaugh had died intestate, and (4) appoint Wm. Monroe Kerr independent administrator of Dr. Cavenaugh's estate. On August 18, 1987, the Midland County Court issued an order granting these requests.

Under the agreement approved by the Midland County Court, Cindy Cavenaugh received two Nissan automobiles, a television set, a video cassette recorder, a stereo, and

$317,750[3] in cash. Cindy Cavenaugh relinquished her claim to all other assets of Dr. Cavenaugh's estate and reconveyed to petitioner various items of real property that Dr. Cavenaugh had transferred to her during their marriage. The parties, excluding Cindy Cavenaugh, also purported to recognize, in a second agreement entered into on June 8, 1987, and approved by the Midland County Court on August 18, 1987, that the estate of Mrs. Cavenaugh, at all times since her death, had owned an undivided one-half interest in the policy and its proceeds.

On December 3, 1987, Mr. Kerr signed and mailed to the Internal Revenue Service Center, Austin, Texas, petitioner's estate tax return. Prior to mailing petitioner's estate tax return, Mr. Kerr attached the following statement to the return:

The estate of Herbert R. Cavenaugh has been involved in a legal dispute as to the ultimate heirs and executor of the estate. Until the appointment of Wm. Monroe Kerr as independent Administrator by the Court on August 18, 1987, none of the parties interested in the estate had access to complete and accurate information necessary to file this return. Therefore, it is respectfully requested that any penalty be abated.

On the estate tax return, petitioner, claiming the marital deduction for the property passing to Cindy Cavenaugh under the will contest settlement agreement and the unified credit against estate tax, reported no Federal estate tax due from Dr. Cavenaugh's estate. Petitioner excluded from Dr. Cavenaugh's gross estate various property interests, having a stipulated value of $254,180.50, in which Dr. Cavenaugh had received a life estate under Articles III, IV, and V of Mrs. Cavenaugh's will and in respect of which he, as executor of her estate, had made the QTIP election. Dr. Cavenaugh's gross estate, as reported by petitioner on the estate tax return, also did not include $327,080, one-half of the death benefit under the policy paid to petitioner on Dr. Cavenaugh's death.

---

[3] The parties in this case have stipulated that Cindy Cavenaugh received $332,750 in cash. However, the agreement entered into by the parties to controversy in the will contest and par. G of the Aug. 18, 1987, order issued by the Midland County Court provided for a cash payment of $317,750.

OPINION

An estate tax is imposed on the transfer of the taxable estate of every citizen or resident decedent of the United States. Sec. 2001(a). Section 2051 defines the taxable estate as the gross estate less deductions. Included in the gross estate is any property in which the decedent had a qualifying income interest for life and for which a QTIP deduction was allowed with respect to the transfer of such property to the decedent. Sec. 2044(b)(1)(A). The gross estate also includes all property receivable by the executor as insurance on the life of the decedent. Sec. 2042(1).

*Section 2044 Property*

The facts underlying this issue illustrate the purposes the marital deduction and QTIP provisions were intended to serve and the estate administration opportunities and pitfalls they create. The marital deduction, as enacted in 1948, was intended to codify the long-standing notion that marital property belongs to the unitary estate of both spouses, and in so doing, postpone the payment of estate tax during the lifetime of the surviving spouse. *Estate of Clayton v. Commissioner,* 976 F.2d 1486, 1491, 1492 n.26 (5th Cir. 1992), revg. and remanding 97 T.C. 327 (1991). However, by 1981, Congress had become aware that the marital deduction provisions, as originally enacted, presented many testators with a Catch-22 dilemma: Provide maximum financial benefits and the estate tax benefit of the marital deduction to the surviving spouse at the risk that he or she would consume the property or appoint or otherwise transfer it to third parties other than the children of the marriage; or instead ensure that, on the death of the surviving spouse, the property would pass to the children at the cost of losing the marital deduction in the estate of the first spouse to die. *Id.* at 1492.

Enactment of the QTIP provisions eliminated this dilemma. The QTIP provisions allow the first spouse to die to leave the surviving spouse a life interest in property that qualifies for the marital deduction without creating the risk that the property will not pass to their children on the death of the surviving spouse, H. Rept. 97-201 (1981), 1981-2 C.B. 352, 377-378; see also *Estate of Clayton v. Commissioner, supra* at 1492; *Estate of Howard v. Commissioner,* 910 F.2d 633, 636

(9th Cir. 1990), revg. 91 T.C. 329 (1988), and also, by discriminating use of the QTIP election and the unified credit, the opportunity to equalize or even zero out their taxable estates, 4 Casner, Estate Planning, par. 13.3, at 70-72 (5th ed. 1988); see also Covey, Marital Deduction and Credit Shelter Dispositions and the Use of Formula Provisions (1984). The price to be paid for these privileges, consistent with "An essential feature of the Marital Deduction from its very beginning, * * * [is] that any property of the first spouse to die that passed untaxed to the surviving spouse should be taxed in the estate of the surviving spouse." *Estate of Clayton v. Commissioner, supra* at 1491.

Petitioner takes the position in this proceeding that the property interests that passed untaxed to Dr. Cavenaugh by way of his QTIP election are not taxable in his estate. Petitioner contends that respondent erred in determining that the gross estate of Dr. Cavenaugh includes the various property interests that passed from Mrs. Cavenaugh to Dr. Cavenaugh under Articles III, IV, and V of her will. Petitioner argues that Articles III and V of Mrs. Cavenaugh's will did not give Dr. Cavenaugh a qualifying income interest for life in Mrs. Cavenaugh's interest in the family home and in the residuary trust under her will. Petitioner argues further that Mrs. Cavenaugh's will precluded Dr. Cavenaugh from making an election that would include in his gross estate the principal of the property interests passing to him under the will.[4]

Respondent, on the other hand, argues that the gross estate of Dr. Cavenaugh includes these various property interests because (1) Dr. Cavenaugh received a qualifying income interest for life in them and (2) a QTIP deduction was elected and allowed for them under section 2056(b)(7). Respondent also argues that petitioner is bound by the duty of consistency, also called quasi estoppel, and the doctrine of equitable estoppel to include these property interests in the gross estate of Dr. Cavenaugh.

Against this background, we interpret and apply Mrs. Cavenaugh's will, Texas law, and the relevant Federal estate tax provisions. Section 2044(a) provides that the gross estate

---

[4] On brief, petitioner concedes that, to the extent that Dr. Cavenaugh had the power to include the corpus of the property interest in his estate, Dr. Cavenaugh received a qualifying income interest for life in the property passed to him under Article IV of the will.

includes any property to which section 2044 applies in which the decedent had a qualifying income interest for life. Section 2044 applies to any property for which a QTIP deduction was allowed under section 2056(b)(7)[5] with respect to the transfer of such property to the decedent. Sec. 2044(b)(1)(a). However, section 2044 does not require the inclusion of property in the gross estate, notwithstanding a prior QTIP election, where the decedent did not have a qualifying income interest for life in the property. See *Estate of Howard v. Commissioner,* 91 T.C. 329, 333 (1988), revd. on other grounds 910 F.2d 633 (9th Cir. 1990).

It is clear that Dr. Cavenaugh, as executor of Mrs. Cavenaugh's estate, elected to deduct, under section 2056(b)(7), the property interests at issue from Mrs. Cavenaugh's gross estate, and that respondent allowed the QTIP deduction for them. We therefore consider whether Dr. Cavenaugh had a qualifying income interest for life in those property interests.

Section 2056(b)(7)(B)(ii) provides that a surviving spouse has a "qualifying income interest for life" if

(I) the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, or has a usufruct interest for life in the property, and

(II) no person has the power to appoint any part of the property to any person other than the surviving spouse.

Whether Dr. Cavenaugh had a qualifying income interest for life in the property at issue must be determined as of the date of Mrs. Cavenaugh's death as if the section 2056(b)(7) election had already been made. *Estate of Clayton v. Commissioner,* 976 F.2d at 1497; see also *Estate of Robertson v. Commissioner,* 98 T.C. 678, 684 (1992). The nature of Dr. Cavenaugh's interest in the property at issue is to be decided under Texas law. *Estate of Kyle v. Commissioner,* 94 T.C. 829, 840 (1990).

Under Texas law, wills are construed to give effect to the actual intention of the testator. See generally *Perfect Union*

---

[5] Sec. 2056(b)(7) is a counterexception to the general exception of sec. 2056(b)(1), which denies a marital deduction to the gross estate for terminable interest property that passed from the deceased spouse to the surviving spouse. *Estate of Clayton v. Commissioner,* 976 F.2d 1486, 1494 (5th Cir. 1992), revg. and remanding 97 T.C. 327 (1991). Under sec. 2056(b)(7), a deduction is allowed for property (1) that passes from the decedent, (2) in which the surviving spouse has a qualifying income interest for life, and (3) for which the executor of the decedent's estate has made the appropriate election. *Estate of Robertson v. Commissioner,* 98 T.C. 678, 684 (1992).

*Lodge No. 10 v. Interfirst Bank,* 748 S.W.2d 218 (Tex. 1988); *Dougherty v. Humphrey,* 424 S.W.2d 617 (Tex. 1968). "The cardinal rule for construing a will requires that the testator's intent be ascertained by looking to the provisions of the instrument as a whole". *Perfect Union Lodge No. 10 v. Interfirst Bank, supra* at 220. In construing a will, any provision that, considered alone, indicates an intent inconsistent with the dominant intention of the entire will is subordinated to the dominant intention. *Grossman v. Campbell,* 368 F.2d 206, 212 (5th Cir. 1966) (quoting *McMurray v. Stanley,* 6 S.W. 412, 413 (Tex. 1887)); *Ellis v. Bruce,* 286 S.W.2d 645, 649 (Tex. Civ. App. 1956) ("every part of a will should be harmonized and given effect if possible so as to enforce the * * * [testator's] dominant intention").

Petitioner contends that Mrs. Cavenaugh did not give Dr. Cavenaugh a qualified income interest for life in her interest in the family home. While petitioner concedes that Mrs. Cavenaugh gave Dr. Cavenaugh a usufruct interest[6] in her interest in the family home for life, petitioner argues that there was a possibility that Dr. Cavenaugh would not have an income interest in the proceeds from any sale of the family home.

Contrary to petitioner's argument, Mrs. Cavenaugh gave Dr. Cavenaugh an income interest for life in her estate's share of the proceeds from any sale of the family home. Mrs. Cavenaugh's will directed that, if the family home were sold, her trustee was to invest her interest from such sale, as necessary and appropriate, in another home for Dr. Cavenaugh, with the balance of her interest to be added to the residuary trust. It follows that Dr. Cavenaugh had a usufruct interest in the proceeds to the extent that the proceeds were invested in another home for him. Additionally, under paragraph B of Article V of Mrs. Cavenaugh's will, Dr. Cavenaugh, during his lifetime, was the sole income beneficiary of the residuary trust. Dr. Cavenaugh accordingly had an income interest in the proceeds to the extent that they were or should have been added to the residuary trust. Inasmuch as all of Mrs. Cavenaugh's interest in the proceeds was to be invested in another home for Dr. Cavenaugh or held in the residuary

---

[6] A usufruct interest is "the right to use, enjoy and receive profits of property that belongs to another." *In re Adjudication of the Water Rights, etc.,* 642 S.W.2d 438, 444 (Tex. 1982); see also Black's Law Dictionary 1544 (6th ed. 1991).

trust, Dr. Cavenaugh was assured an income interest for life in the family home and the proceeds therefrom.

Petitioner also argues that Mrs. Cavenaugh's will did not give Dr. Cavenaugh a qualified income interest for life in the residuary trust. Petitioner argues that, according to paragraph B of Article V of Mrs. Cavenaugh's will, the trustee of the residuary trust had discretion to decide the amount and timing of distributions of trust income to Dr. Cavenaugh. Petitioner therefore argues that all income from the residuary trust was not payable, at least annually, to Dr. Cavenaugh as required by section 2056(b)(7)(B)(ii)(I).

Paragraph B of Article V of Mrs. Cavenaugh's will provided that the trustee pay Dr. Cavenaugh the net income from the residuary trust "*monthly* or at the end of such other periods as may be necessary or desirable in the discretion of the Trustee." (Emphasis added.) While this clause, standing alone, is susceptible of more than one interpretation, the manifest dominant intent of Mrs. Cavenaugh's will was that all income of the residuary trust was to be paid to Dr. Cavenaugh, at least annually, during his lifetime.[7] To conclude that Mrs. Cavenaugh intended to give the trustee absolute discretion in choosing when to pay the income to Dr. Cavenaugh would mean that the term "monthly" added nothing to the will. Because Texas presumes that a testator would not include useless expressions in her will, *Republic Natl. Bank v. Fredericks,* 283 S.W.2d 39, 44 (Tex. 1955), Mrs. Cavenaugh's use of the term "monthly" indicates that, at a minimum, her intent was that the trustee distribute the income to Dr. Cavenaugh at reasonable intervals. A reasonable interval is ordinarily semiannually or quarterly. 2A Scott, Trusts, sec. 182, at 550 (4th ed. 1987).

Our conclusion that Mrs. Cavenaugh intended the income of the residuary trust to be distributed at least annually also is supported by the failure of her will to provide for the disposition of accumulated income. The general rule is that, if the trustee has no right to withhold and accumulate income, trust income payable to a life beneficiary must be paid currently. *Id.* While a requirement that the income be paid currently does not mean as soon as it is received, it is an indica-

---

[7] Because sec. 2056(b)(7)(B)(ii) only requires that Dr. Cavenaugh be entitled to all the income at least annually, we need not decide whether the income was payable at more frequent intervals.

tion that the income is to be paid at least annually. Cf. sec. 662(a)(1) ("the phrase 'the amount of income for the taxable year required to be distributed currently' includes any amount required to be paid out of income or corpus to the extent such amount is paid out of income for such taxable year").

Our conclusion that Mrs. Cavenaugh intended the income of the residuary trust to be distributed at least annually is supported further by the provision in the will granting Dr. Cavenaugh a noncumulative right to invade the corpus of the residuary trust. There is an obvious presumption that the trust settlor intends that the trust income be distributed before corpus is invaded. In the case at hand, paragraph D of Article V of the will gave Dr. Cavenaugh, the residuary trust's income beneficiary, the right to withdraw, in any calendar year, the greater of $5,000 or 5 percent of the corpus of the trust. Because Dr. Cavenaugh was entitled to invade the corpus of the residuary trust in any calendar year, we infer that the trust income was payable to Dr. Cavenaugh contemporaneously with these potential distributions of corpus, or no less often than annually. We accordingly conclude that the income of Mrs. Cavenaugh's residuary trust was payable to Dr. Cavenaugh at least annually.

Notwithstanding the above, petitioner contends that Dr. Cavenaugh did not have a qualifying income interest for life in the property at issue because the section 2056(b)(7) election on Mrs. Cavenaugh's Federal estate tax return was ineffective for Federal estate tax purposes. Petitioner argues that Dr. Cavenaugh had no authority to make a section 2056(b)(7) election, with respect to any property that passed to him under Mrs. Cavenaugh's will, because Article IV of Mrs. Cavenaugh's will provided, in pertinent part, that

Under no circumstances is it my intent to invest in my said husband, nor shall he have, any right or power which would ever enlarge his interest in any of the property referred to herein beyond that of a life tenant, or which would or should ever be construed to be such as to cause the principal or corpus of any of such property to be includable in the estate of my said husband for either Federal estate or state inheritance tax purposes at the time of her [sic] death.

Petitioner therefore argues that Dr. Cavenaugh's decision to elect QTIP treatment, under section 2056(b)(7), with respect

to the property passed to him under Articles III, IV, and V, was a legal nullity.

This argument of petitioner does not address whether Dr. Cavenaugh had a qualifying income interest for life, but is, in effect, a belated attempt to revoke the QTIP election that Dr. Cavenaugh believed he had the right to make. Once made, a QTIP election cannot be revoked. Sec. 2056(b)(7)(B)(v). Even if it were revocable, it would not be petitioner's to revoke, but that of First City National Bank of Midland, as successor executor of Mrs. Cavenaugh's estate. *Estate of Howard v. Commissioner*, 91 T.C. at 333. Accordingly, for Federal estate tax purposes, petitioner cannot disavow the QTIP election with respect to property in which Dr. Cavenaugh had a qualifying income interest for life and for which the QTIP deduction was allowed on Mrs. Cavenaugh's estate tax return. Sec. 2044.

Even if petitioner's argument should not be treated as a belated attempt to revoke the QTIP election, the above-quoted provision of Mrs. Cavenaugh's will did not preclude Dr. Cavenaugh, as executor of her estate, from electing QTIP treatment for Federal estate tax purposes.[8] The dominant intent and effect of Article V of Mrs. Cavenaugh's will was to assure that the property in the residuary trust would remain unimpaired for the benefit of the children. Accordingly, the manifest intent of the above-quoted provision was to make clear that Dr. Cavenaugh was entitled to no more than a life estate in the property interests at issue and that he should not be deemed to have any power of appointment or appropriation over them. We therefore conclude that this provision was not intended to prevent—nor did it have the effect of preventing—the executor of Mrs. Cavenaugh's estate from making the QTIP election.

Inasmuch as Dr. Cavenaugh's income interest in the property at issue was a qualifying income interest for life for which a valid QTIP election had been made, the property must be included in Dr. Cavenaugh's gross estate. Respondent's determination is therefore sustained, and we need not

---

[8] The QTIP provisions were added to the Internal Revenue Code on Aug. 13, 1981, Economic Recovery Tax Act of 1981, Pub. L. 97-34, sec. 403(d), 95 Stat. 172, 302, approximately 11 months after Mrs. Cavenaugh executed her will. It therefore seems unlikely to us that Mrs. Cavenaugh and the drafter of her will had QTIP in mind when they included this provision of her will.

address respondent's alternative arguments on the duty of consistency and the doctrine of equitable estoppel.

## Life Insurance Proceeds

Section 2042(1) provides that "The value of the gross estate shall include * * * the amount receivable by the executor as insurance under policies on the life of the decedent." However, life insurance proceeds payable to the executor are not included in the gross estate to the extent that they belong to the decedent's spouse under State community property law. Sec. 20.2042-1(b)(2), Estate Tax Regs. The corollary of this rule is that the proceeds so excluded, to the extent that they are not consumed by the uninsured spouse, should be included in that spouse's gross estate. See 5 Bittker & Lokken, Federal Taxation of Income, Estates and Gifts, par. 127.5, at 127-24 to 127-25 (2d ed. 1993).

The extent, if any, to which the proceeds of a life insurance policy belonged to the uninsured spouse, or her estate, so as to be excludable from the estate of the insured spouse, is to be decided under State law. *Broday v. United States,* 455 F.2d 1097, 1099 (5th Cir. 1972); *Estate of Fulmer v. Commissioner,* 83 T.C. 302, 304 (1984).

Petitioner contends that, under Texas law, it had no more than a one-half interest in the policy and its proceeds, and that Mrs. Cavenaugh had the other one-half interest, so that, on her death, the residuary trust under her will became entitled to her one-half interest in the policy, including any future proceeds. Petitioner therefore argues that it properly excluded, from the gross estate of Dr. Cavenaugh, one-half the death benefit paid to it by New England Mutual.

Respondent contends that Dr. Cavenaugh's gross estate includes the entire death benefit paid to petitioner by New England Mutual on Dr. Cavenaugh's death. Respondent argues that the "inception of title" rule[9] used by the Texas courts to determine the community or separate character of property has been applied only to whole life insurance policies and that the rule is not "helpful in resolving [petition-

---

[9] In Texas, the status of property, whether community or separate, is fixed at the time of acquisition or inception of title. *Colden v. Alexander,* 171 S.W.2d 328, 334 (Tex. 1943); *Creamer v. Briscoe,* 109 S.W. 911, 912 (Tex. 1908); Speer, Texas Family Law Service, sec. 18:29, at 32-33 (6th ed. 1988). Thus, if either spouse uses community funds to purchase property, the property belongs to the community. *Freedman v. United States,* 382 F.2d 742, 745 (5th Cir. 1967).

er's] term life insurance policy question." Because a term life insurance policy provides pure life insurance, has no cash surrender value or loan value, and only furnishes insurance protection for a specified limited period of time (until the next renewal date), respondent argues that any community interest of Mrs. Cavenaugh in the unmatured policy lapsed on the policy's first renewal date following her death. Respondent accordingly argues that the residuary trust under Mrs. Cavenaugh's will never had a property interest in the policy's death benefit.

In 1957, the Texas legislature amended the State's statutory definition of "property" to include "insurance policies and the effects thereof." 1957 Tex. Gen. Laws. ch. 404; *Brown v. Lee,* 371 S.W.2d 694, 696 (Tex. 1963). The intent of the amendment was to align Texas with other community property States adhering to the view that the right to receive death benefits payable at a future but uncertain date is "property" in the nature of a chose in action maturing at the death of the insured. *Brown v. Lee, supra* at 696; see also Speer, Texas Family Law Service, sec. 18:56, at 54 (6th ed. 1988). Texas thereupon established that insurance proceeds, like other forms of property, was subject to the "inception of title" rule. *McCurdy v. McCurdy,* 372 S.W.2d 381, 384 (Tex. Civ. App. 1963); see also *Estate of Wildenthal v. Commissioner,* T.C. Memo. 1970-119. What remains unclear is whether "each renewal policy [of a term life insurance policy] is a new policy or does the inception of the right go back to the first premium payment on the first year's policy?" Speer, *supra,* sec. 18:58, at 57.

Even if we agree with petitioner that the "inception of title" of a term life insurance policy relates to the first premium paid on the policy, petitioner's argument that Mrs. Cavenaugh's estate had a one-half interest in the policy is without merit. Under Texas law, the general rule is that the community interest of the uninsured spouse who predeceases the insured spouse is settled by distributing an amount equal to one half the cash surrender value [10] of the unmatured

---

[10] Where the policy has no cash surrender value, as with a term insurance policy, Texas uses the interpolated terminal reserve method of valuation to determine the uninsured spouse's community interest in the policy. See *Bullock v. City Natl. Bank,* 550 S.W.2d 763, 766 (Tex. Civ. App. 1977) (community interest of an uninsured spouse, where the spouses died simultaneously, in term life insurance policies payable to the estate of the insured spouse was one-half of the

chose to the uninsured spouse's estate and the other one-half interest (plus ownership of the unmatured chose) to the insured spouse. *Brown v. Lee, supra* at 696 (citing *Thompson v. Calvert,* 301 S.W.2d 496 (Tex. Civ. App. 1957)). The exception to this rule is that the estate of the uninsured spouse is entitled to one-half the proceeds of the policy if the insured spouse dies prior to a settlement of the uninsured spouse's community interest in the policy. *Id.* at 696.

Contrary to petitioner's contention, Mrs. Cavenaugh's community interest in the policy ended during Dr. Cavenaugh's lifetime, despite the failure to partition the community. Mrs. Cavenaugh's community interest in the policy equaled no more than one-half of any cash surrender value or interpolated terminal reserve value of the policy at her death. See *id.; Bullock v. City National Bank,* 550 S.W.2d 763, 766 (Tex. Civ. App. 1977); see also *Mitchell v. Mitchell,* 448 S.W.2d 807, 811 (Tex. Civ. App. 1969). The record in this case does not establish that the policy had any cash surrender or terminal reserve value on the date of Mrs. Cavenaugh's death. Inasmuch as the policy had no such value at Mrs. Cavenaugh's death, Mrs. Cavenaugh's community interest in the policy was zero and no distribution was necessary to settle her community interest in the policy. See *Mitchell v. Mitchell, supra* at 811 (ex-wife's community interest in a Federal group life insurance policy with no cash surrender or loan value was settled upon her divorce from the insured, even though the divorce decree did not specifically dispose of the policy). Accordingly, Mrs. Cavenaugh's community interest in the policy was settled on the date of her death, and her estate had no rights in the policy or its proceeds.

We therefore hold that the gross estate of Dr. Cavenaugh includes the entire death benefit paid to petitioner by New England Mutual on the death of Dr. Cavenaugh. Respondent's determination on this issue is sustained.

---

policies' interpolated terminal reserve value). While the parties in *Bullock* stipulated that the term policies at issue had no terminal reserve value, *id.* at 766, a renewable term life insurance policy with a level premium plan would have a terminable reserve value. See Magee, Life Insurance 45 (3d ed. 1958). However, the New England Mutual policy at issue did not provide for level premiums, but instead for premium payments that increased each year with the advancing age of the insured.

*Addition to Tax for Late Filing*

Section 6018(a) provides that an estate tax return shall be made if the decedent was a citizen or resident of the United States with a gross estate exceeding $500,000.[11] Section 6075(a) states that "Returns made under section 6018(a) (relating to estate taxes) shall be filed within 9 months after the date of the decedent's death." While a reasonable extension of time for filing the estate tax return may be granted, no such extension shall be for more than 6 months. Sec. 6081(a).

Where the taxpayer files an estate tax return after the prescribed due date, including any extension of time for filing, section 6651(a)(1) provides for an addition to tax equal to 5 percent of the amount of tax required to be shown on the return for each month, or fraction thereof, that the return is not filed, not to exceed 25 percent in the aggregate. However, no addition to tax is imposed where the delay in filing the estate tax return is due to reasonable cause and not willful neglect. Sec. 6651(a)(1); *Estate of Vriniotis v. Commissioner,* 79 T.C. 298, 310 (1982); see also *United States v. Boyle,* 469 U.S. 241, 245 (1985). Reasonable cause exists where the taxpayer exercises ordinary business care and prudence and is still unable to file the return on or before the prescribed due date. *Estate of Vriniotis v. Commissioner, supra* at 310; sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Whether petitioner had reasonable cause for its late filing of Dr. Cavenaugh's estate tax return is a question of fact to be decided on the entire record. *Estate of Duttenhoffer v. Commissioner,* 49 T.C. 200, 204 (1967), affd. 410 F.2d 302 (6th Cir. 1969); see also *Denenburg v. United States,* 920 F.2d 301, 303 (5th Cir. 1991). Petitioner bears the burden of proof on this issue. Rule 142(a); *Estate of DiPalma v. Commissioner,* 71 T.C. 324, 326 (1978).

Petitioner contends that respondent's determination of an addition to tax for late filing "is arbitrary and capricious and should be set aside." Petitioner argues that imposing an addition to tax for late filing penalizes the Cavenaugh children without furthering a legitimate governmental aim. Peti-

---

[11] The filing requirement amount was $500,000 for a decedent dying in 1986. Sec. 6018(a)(1), (3). However, in general, the filing requirement amount varied based on the date of the decedent's death. *Id.*

tioner also argues that, in its case, it was not practicable to file an estate tax return on or before the prescribed due date, because any such return would not have been meaningful.

Respondent contends that petitioner's failure to file a timely estate tax return was not due to reasonable cause. Respondent argues that petitioner could have filed an estate tax return before the prescribed due date, based on the information then available, and amended that return following the conclusion of the probate proceeding. For the reasons that follow, we agree with respondent.

Petitioner incorrectly argues that respondent's determination of an addition to tax for late filing of the estate tax return is arbitrary and capricious. Under section 6651(a), an addition to tax for late filing is mandatory unless the taxpayer shows that the late filing was due to reasonable cause. *Rubber Research, Inc. v. Commissioner*, 422 F.2d 1402 (8th Cir. 1970), affg. T.C. Memo. 1969-24; *Plunkett v. Commissioner*, 118 F.2d 644, 649 (1st Cir. 1941), affg. 41 B.T.A. 700 (1940); *Constantino v. United States*, 85-2 USTC par. 13,629, 56 AFTR 2d 85-6551 (N.D. Cal. 1985). Because petitioner filed its estate tax return over 3 months after the prescribed due date, including the maximum extension allowed under section 6081(a), we disagree with petitioner's argument that respondent's determination of an addition to tax under section 6651(a) was arbitrary and capricious. Cf. *Helvering v. Mitchell*, 303 U.S. 391, 401 (1938).

Petitioner has not shown that its failure to file a timely estate tax return was due to reasonable cause. While we have held that a taxpayer had reasonable cause to file late where protracted litigation made it impossible for the taxpayer to gather its records within the prescribed time, *Hendrick Ranch Royalties v. Commissioner*, a Memorandum Opinion of this Court dated March 22, 1943, the fact that petitioner was involved in litigation that affected Dr. Cavenaugh's estate tax is not in and of itself reasonable cause, *Estate of Duttenhoffer v. Commissioner, supra* at 206. Petitioner "was required to file * * * [an estate tax] return based on the best information available and then file a later amended return if necessary." *Estate of Vriniotis v. Commissioner, supra* at 311. Petitioner has not offered any evidence that First Republic Bank, as temporary administrator of Dr. Cavenaugh's estate, which remained in office until August

18, 1987, 3 days beyond the due date, as extended, for filing the Federal estate tax return, did not have, and could not have obtained, for reasons beyond its control, the records it needed to file a timely estate tax return. Nor has petitioner shown that First Republic Bank, as temporary administrator, was unable for some other reason to file an estate tax return within the extended period. Also, inasmuch as the will contest settlement agreement was executed on June 8, 1987, petitioner has not shown why an order could not have been obtained much earlier than August 18, 1987, from the Midland County Court, appointing Mr. Kerr independent administrator, and replacing First Republic Bank as temporary administrator, so that he could have started sooner to prepare the Federal estate tax return. Accordingly, petitioner's failure to file a timely estate tax return for Dr. Cavenaugh has not been shown to be a necessary consequence of the pending probate proceeding. We therefore cannot say that petitioner exercised ordinary business care and prudence, but nevertheless was unable to file the Federal estate tax return within the prescribed time.

We accordingly hold that petitioner has not established reasonable cause for failing to file the Federal estate tax return on or before the prescribed date. Respondent's determination of an addition to tax under section 6651(a) is therefore sustained.

To reflect the foregoing, and because of concessions by the parties,

*Decision will be entered under Rule 155.*