910 F.2d 633
 66 A.F.T.R.2d 90-5994, 59 USLW 2130, 90-2
USTC P 60,033
 ESTATE OF Rose D. HOWARD, Deceased; Roger W.A. Howard;
Volney E. Howard, III; Alanson L. Howard; Robert
L. Briner, Trustees, Petitioners-Appellees,
v.
COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent-Appellant.
 No. 89-70196.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 7, 1990.
Decided Aug. 7, 1990.
 
 Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, Gilbert S. Rothenberg, Joan I. Oppenheimer, Tax Div., Dept. of Justice, Washington, D.C., for respondent/appellant.
 William W. Sumner, Charity Kenyon, Diepenbrock, Wulff, Plant & Hannegan, Sacramento, Cal., for petitioners/appellees.
 Appeal from a Decision of the United States Tax Court.
 Before CANBY, NOONAN and RYMER, Circuit Judges.
 NOONAN, Circuit Judge:
 
 
 1
 The estate of Rose D. Howard (the petitioner) brought suit in the Tax Court for a redetermination of the deficiencies set out by the Commissioner of Internal Revenue (the Commissioner). The Tax Court gave judgment for the petitioner. 91 T.C. 329 (1988). The Commissioner appeals. This case requires the construction of the Internal Revenue Code, 26 U.S.C. Sec. 2056(b)(7). Although the issue is narrow, there has been considerable interest in the case among tax practitioners and estate planners. We reverse the Tax Court.
 
 FACTS
 
 2
 The facts, as stipulated by the parties, are as follows:
 
 
 3
 On January 1, 1982 Volney E. Howard, Jr. and his wife, Rose D. Howard, created a family trust, transferring to it substantially all of their assets. The trust provided that on the death of either Volney or Rose the balance of the trust, after paying a specified bequest to the Howard children, would be divided into two separate trusts.
 
 
 4
 Volney died April 24, 1983. The trust was then divided into Trust A and Trust B. Rose's separate property and her interest in the community property were transferred to Trust A. Volney's separate property and interest in the community property were transferred to Trust B. It is the status of Trust B that is at issue in this case.
 
 
 5
 Under the terms of Trust B the Trustee was to pay to Rose or apply for her benefit the net income "quarter-annually or at more frequent intervals." The Trustee was to also pay Rose such amounts as she requested in writing not exceeding in any calendar year the greater of $5,000 or 5% of the value of the principal. On the death of Rose the Trustee was to distribute any of the trust not otherwise disposed of for the benefit of the Howard children. The provision was reinforced by a "general provision" that provided: "Income accrued or held undistributed by the Trustee at the termination of any interest shall go to the next beneficiaries of the Trust in proportion to their interests in the Trust."
 
 
 6
 A federal estate tax return was filed for Volney's estate on January 24, 1984. On that return the executor elected to treat Trust B as qualified terminable interest property (QTIP), as defined in section 2056(b)(7)(B) of the Internal Revenue Code. This election entitled the estate to deduct Trust B from the estate and as a consequence to report no federal estate tax liability.
 
 
 7
 Rose Howard died on February 11, 1984. On July 3, 1984, five months after her death, Volney's estate filed an amended estate tax return. The new return took the position that the QTIP election had been invalid. Trust B was included in the estate, no marital deduction was claimed, and estate tax liability of $379,562 was admitted.
 
 
 8
 Rose's estate tax return was filed on November 9, 1984. It included $36,732 from Trust B, representing the value of her right to withdraw principal in the year of her death. The return did not include the bulk of the assets of Trust B, which then amounted to $1,286,867. Her return also claimed a credit for tax on prior transfers relating to her income interest in Trust B in the amount of $151,295. The estate admitted a tax liability of $161,764.
 
 
 9
 On audit of Rose's return, the Commissioner disallowed the claimed credit and included Trust B in her estate. Together with miscellaneous other adjustments, the Commissioner's action resulted in a determination that Rose's estate owed an additional $673,884. The petitioner then commenced this action.
 
 THE TAX COURT OPINION
 
 10
 The Tax Court opinion, 91 T.C. No. 26 (1988), held for the petitioner in its construction of section 2056(b)(7)(B). This statute reads as follows:
 
 
 11
 (i) In general.--The term "qualified terminable interest property" means property--
 
 
 12
 (I) which passes from the decedent,
 
 
 13
 (II) in which the surviving spouse has a qualifying income interest for life, and
 
 
 14
 (III) to which an election under this paragraph applies.
 
 
 15
 (ii) Qualifying income interest for life.--The surviving spouse has a qualifying income interest for life if--
 
 
 16
 (I) the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, ... and
 
 
 17
 (II) no person has a power to appoint any part of the property to any person other than the surviving spouse.
 
 
 18
 The Tax Court noted the statutory language "qualified income interest for life" and agreed with the petitioner that under the statutory definition of this phrase, the spouse must be entitled to all the income. For the Tax Court the key word was "all." Rose Howard did not receive "all" of the income, because some of the income ("the stub") had accumulated between the quarterly distribution date and her death, and this income went to her children. Accordingly, the Tax Court held that Trust B was not a QTIP. The Commissioner appealed.
 
 ANALYSIS
 
 19
 Our starting point must be the same as the Tax Court's and the parties': the precise language of a precise statute. The statute recognizes a QTIP in a trust where the spouse is entitled to all of the income that is at least payable annually. The statute does not require that each day income accumulates that the income be paid immediately to the spouse. As long as the income is payable at least annually and the spouse is entitled to all regular distributions as long as she lives, the statutory test is met.
 
 
 20
 Our reading of the statute is consistent with the realities of trust administration. No trust pays its beneficiaries on a daily basis. The statute did not impose such an unrealistic requirement for a trust to become a QTIP; nor did the statute impose the requirement that the spouse hold a power of appointment over the stub income. All that was required was that the spouse be entitled to all the income at the time of its annual or more frequent distribution. The statute imposes no requirement as to whom the accumulated income must go after the spouse's death. If she has been entitled to regular distributions at least annually, she has had an income interest for life.
 
 
 21
 The clear meaning of the statute is confirmed by its legislative history. The report of the Committee on Ways and Means proposed as new legislation an "unlimited marital deduction" and explained at length what was meant. The committee pointed out that as the law stood certain interests given one spouse by the other without total control would not be eligible for the unlimited marital deduction and that consequently a decedent who was giving property to his spouse "would be forced to choose between surrendering control of the entire estate to avoid imposition of estate tax at his death or reducing his tax benefits at his death to insure inheritance by the children." H.R.Rep. No. 201, 97th Cong., 1st Sess. 160 (1981), reprinted in 1981-2 C.B. 378. The report continued:
 
 
 22
 The committee believes that the tax laws should be neutral and that tax consequences should not control an individual's disposition of property. Accordingly, the committee believes that a deduction should be permitted for certain terminable interests.
 
 
 23
 Id.
 
 
 24
 In furtherance of this goal the Committee proposed that the QTIP qualify for the unlimited marital deduction. Id. at 161, reprinted in 1981-2 C.B. 378. The Senate's version of the bill did not have a similar provision. S.Rep. No. 144, 97th Cong., 1st Sess. 126-127 (1981), U.S.Code Cong. & Admin.News 1981, 105, 227, 228, reprinted in 1981-2 C.B. 461-62. The conference report on the Economic Recovery Tax Act of 1981 accepted the House proposal. Conf.Rep. No. 215, 97th Cong., 1st Sess. 247 (1981), reprinted in 1981-2 C.B. 507.
 
 
 25
 The meaning of the statute is also confirmed by the Commissioner's Proposed Regulations Sec. 20.2056(b)-7(c)(ii), which in so many words declare that:
 
 
 26
 ... an income interest will not fail to constitute a qualifying income interest for life solely because income between the last distribution date and the date of the surviving spouse's death is not required to be distributed to the surviving spouse or the surviving spouse's estate. See Sec. 20.2044-1 relating to the inclusion of such undistributed income in the surviving spouse's estate.
 
 
 27
 49 Fed.Reg. 21,350, at 21,357 (1984) (proposed May 21, 1984). The cross-reference in this regulation is to another Proposed Regulation, Sec. 20.2044-1(a)(2), that in harmony with a QTIP not being taxed in the grantor's estate does tax the income in the estate of the surviving spouse. Id. at 21,353. Proposed regulations do not have the force of law; nonetheless, they do converge with our reading of the statute and confirm this reading. See Butka v. Commissioner, 91 T.C. 110, 130 (1988) (proposed regulation not complete nullity), aff'd, 886 F.2d 442 (D.C.Cir.1989).
 
 
 28
 The petitioner strenuously argues that section 2056(b)(7)(B) should be construed as though it made the same requirement as section 2056(b)(5). The latter provision is entitled "Life estate with power of appointment in surviving spouse." This section of the Code creates a marital deduction if the surviving spouse "is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion ... and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse." The petitioner notes that the language of this section is "nearly identical" with the language of (b)(7)(B) recognizing the QTIP. The petitioner makes the argument that language that is "nearly identical" should be construed as though it were actually identical.
 
 
 29
 This argument is unpersuasive. In a statute so carefully crafted every difference counts. Nearly identical language is not the same language. In dealing with a life estate with power to appoint in the surviving spouse, the statute dealt with a kind of property interest distinct from the QTIP where the surviving spouse has no power of appointment but only the right to income. The whole purpose of the QTIP provision was to dispense with the requirement of a power of appointment as a condition of entitlement to the marital deduction. Since the power of appointment is not required, there is no need to require a power of disposal of the undistributed income. As the property interests dealt with by sections 2065(b)(5) and 2065(b)(7) are distinct, so is the language governing them.
 
 
 30
 The petitioner's argument also runs head on into the legislative history. The House Report specifically states that if property is not placed in trust such property can qualify as a QTIP only if the spouse is provided "with rights to income which are sufficient to satisfy the rules applicable to marital deduction trusts under present law." H.R.Rep. No. 201, 97th Cong., 1st Sess. 161, reprinted in 1981-2 C.B. 378. The committee does not make such a requirement of property that is "placed in trust." Id. The petitioner seeks to do what Congress refused to do.
 
 
 31
 The petitioner advances an argument based on a 1982 Congressional amendment relating to "pooled income funds." 26 U.S.C. Sec. 2056(b)(7). Again, the petitioner's argument fails. An amendment of one part of a statute does not alter the meaning of that part of the statute which is independent and unamended. The amendment simply harmonized the treatment of undistributed stub income going to a pooled fund with that of stub income going, as here, to the trust beneficiaries.
 
 
 32
 Under the Commissioner's construction of what constitutes a QTIP, trusts such as Trust B are includable in the gross estate of Rose Howard under section 2044 of the Code. This provision states in explicit terms: "The value of the gross estate shall include the value of any property to which this section applies in which the decedent had a qualifying income interest for life." The Commissioner has taken the position that the effect of this provision is to include in the surviving spouse's taxable estate the undistributed stub income in issue here. Proposed Regulation Sec. 20.2044-1(a). We agree.
 
 
 33
 The petitioner attacks this conclusion of the Commissioner by saying that Sec. 2044 "is silent" about undistributed stub income. Again, the petitioner's argument is unpersuasive. The statute is all-inclusive. It did not have to enumerate all of the components of a QTIP. If, as we have held, Rose held a QTIP, the statute embraced all of it, including the income undistributed at her death.
 
 
 34
 REVERSED.
 
 RYMER, Circuit Judge, dissenting:
 
 35
 Despite the fact that the majority reaches a felicitous result, the tax court's analysis appears literally correct. The statute says that to have a "qualified income interest for life" the surviving spouse must have been "entitled to all the income from the property, payable annually or at more frequent intervals." Sec. 2056(b)(7)(B)(ii)(I). The tax court read this provision as requiring that the surviving spouse be entitled to distributions at least annually, and be entitled to all the income--which is not the case if "stub" income does not go to the surviving spouse's beneficiaries.[1] While this may not comport with "the realities of trust administration," I would leave it to the Congress to correct unintended consequences of ambiguous language by technical amendment. I therefore respectfully dissent for the reasons set forth in Judge Tannenwald's opinion.
 
 
 
 [1]
 This is not an unreasonable interpretation. It takes both of the Commissioner's Proposed Regulations, Secs. 20.2044-1(a) and 20.2056(b)-7(c)(1), to harmonize the Code's provisions for the marital deduction and to achieve the outcome the IRS proposes in this case. Since the Howard family trust was created before these regulations were proposed, they did not even provide petitioners "a warning of things to come." Butka, 91 T.C. at 130. In any event, proposed regulations carry no more weight than a position advanced on brief. Laglia v. Commissioner, 88 T.C. 894, 897 (1988)