ESTATE OF LUCILLE P. SHELFER, DECEASED, THE QUINCY STATE BANK, PERSONAL REPRESENTATIVE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 25389–92.          Filed July 19, 1994.

*Thornton M. Henry,* for petitioner.
*Eli J. Dicker,* for respondent.

LARO, *Judge:* This case is before the Court pursuant to a petition filed by the Estate of Lucille P. Shelfer, Deceased (petitioner), the Quincy State Bank, personal representative for a redetermination of respondent's determination of a $1,321,638.30 deficiency in Federal estate tax. Pursuant to Rule 122(a),[1] the parties submitted this case to the Court without trial; the record consists of the pleadings and stipulated facts with accompanying exhibits.

[1] Unless otherwise indicated, Rule references are to the Tax Court Rules of Practice and Procedure, and section references are to the Internal Revenue Code in effect at the time of the death of Lucille P. Shelfer.

After a concession by petitioner,[2] the issue for decision is whether a trust for which an election had been made under section 2056(b)(7) to obtain a marital deduction for qualified terminable interest property (QTIP) under section 2056 was a QTIP trust so as to be includable in the gross estate of Lucille P. Shelfer (decedent). We hold that the trust was not a QTIP trust, and accordingly is not includable in decedent's gross estate.

## FINDINGS OF FACT

The facts in the joint stipulation and accompanying exhibits are incorporated herein by this reference. At the time the petition was filed in this case, the personal representative's principal place of business was Quincy, Florida. Decedent was a resident of Florida at the time of her death.

Elbert B. Shelfer, Jr. (Mr. Shelfer), and decedent were husband and wife until Mr. Shelfer's death on September 13, 1986. Prior to his death, Mr. Shelfer executed his last will and testament (the will). Under the terms of the will, the residue of Mr. Shelfer's estate (the estate) was divided into two shares. The first share, designated "share number one", consisted of an amount equal to one-third of the residue; the second, designated "share number two", consisted of the remaining two-thirds of the residue. Pursuant to the will, share number one and share number two were held in separate trusts. The Quincy State Bank served as trustee for each trust. Hereinafter, the trusts shall be referred to separately as the Share Number One Trust and the Share Number Two Trust.

Under the will, decedent received the net income from the Share Number Two Trust, payable in quarterly installments during her lifetime. Decedent had no power to require distribution of income from the Share Number Two Trust more frequently. Decedent had no power of appointment over the income of the Share Number Two Trust that accumulated from the date of the last distribution to the date of her death. The will did not require that all income earned after the last distribution date and before decedent's death be distributed to her or her estate. Pursuant to the will, upon decedent's

---

[2] Petitioner conceded that the value of the Share Number One Trust, discussed below, was $2,295,719 on the date of the death of Elbert B. Shelfer, Jr.

death, the Share Number Two Trust terminated, with the principal and any undistributed income therefrom payable to Mr. Shelfer's niece. The value of the Share Number Two Trust was $2,829,610 at the date of decedent's death.

On June 16, 1987, the personal representative of the Estate of Mr. Shelfer filed a Form 706, U.S. Estate Tax Return, for the estate. The personal representative elected to treat 54.273 percent of the assets of the Share Number Two Trust as QTIP, and claimed a marital deduction under section 2056 for that percentage of the assets. The Form 706 for the estate was later selected for an estate tax examination. On April 26, 1989, an estate tax examination report was issued that allowed the marital deduction for the claimed partial QTIP election, and increased to 55.945 percent the percentage of the assets of the Share Number Two Trust subject to the election. On May 10, 1989, an estate tax closing letter was issued to the personal representative of the estate. The estate did not file an amended Form 706. The period of limitations on assessment of the estate expired on June 16, 1990.

Decedent died on January 18, 1989. On October 18, 1989, the Quincy State Bank filed a Form 706 on behalf of decedent's estate. The trust property for which a QTIP election had been made was not included in the gross estate on the Form 706 for decedent's estate.[3] In order to qualify as a QTIP trust, the Share Number Two Trust must meet the requirements of section 2056(b)(7)(B).[4] On July 12, 1990,

---

[3] On Aug. 23, 1988, the Tax Court decided *Estate of Howard v. Commissioner,* 91 T.C. 329 (1988), revd. 910 F.2d 633 (9th Cir. 1990). In *Estate of Howard,* the Court held that a trust was not includable in the surviving spouse's estate, despite the QTIP election of her husband's estate, where income accumulating between the last distribution date and her death was not disposable as directed by her.

[4] Sec. 2056(b)(7)(B) provides, in relevant part:

(i) IN GENERAL.—The term "qualified terminable interest property" means property—
    (I) which passes from the decedent,
    (II) in which the surviving spouse has a qualifying income interest for life, and
    (III) to which an election under this paragraph applies.
(ii) QUALIFYING INCOME INTEREST FOR LIFE.—The surviving spouse has a qualifying income interest for life if—
    (I) the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, * * *, and
    (II) no person has a power to appoint any part of the property to any person other than the surviving spouse.

Subclause (II) shall not apply to a power exercisable only at or after the death of the surviving spouse. To the extent provided in regulations, an annuity shall be treated in a manner similar to an income interest in property (regardless of whether the property from which the annuity is payable can be separately identified).

respondent commenced an estate tax audit of the Form 706 for decedent's estate. On December 12, 1990, an estate tax examination report was issued to decedent's estate in which the same percentage of the Share Number Two Trust treated as QTIP was included in the gross estate of decedent's estate. A notice of deficiency in estate tax was mailed to petitioner on August 17, 1992.

OPINION

Section 2001 imposes a tax on the transfer of the taxable estate of every citizen and resident decedent. The taxable estate of a decedent is the decedent's gross estate less allowable deductions. Sec. 2051. Section 2056(b)(7)(A) allows the value of property that is QTIP to be deducted from the gross estate. The value of the QTIP is then included in the surviving spouse's gross estate. Sec. 2044.

Respondent determined that a portion of the Share Number Two Trust is QTIP that must be included in decedent's gross estate under section 2044. Petitioner argues that the Share Number Two Trust is not QTIP, and therefore no part of it is includable in decedent's gross estate. We must decide whether a portion of the Share Number Two Trust is QTIP. If it is not, then its value is not includable in decedent's estate. See sec. 2044. Among other requirements, the Share Number Two Trust must be property in which the decedent had a "qualifying income interest for life". Sec. 2056(b)(7)(B)(i)(II). Under section 2056(b)(7)(B)(ii), a surviving spouse has a "qualifying income interest for life" if, in addition to meeting other requirements, he or she "is entitled to all the income from the property, payable annually or at more frequent intervals". Respondent argues that decedent had a qualifying income interest for life because she was entitled to all of the income from the Share Number Two Trust, payable at least annually. Petitioner argues that decedent did not have a qualifying income interest for life because she was not entitled to the income accruing between

(iii) PROPERTY INCLUDES INTEREST THEREIN.—The term "property" includes an interest in property.

(iv) SPECIFIC PORTION TREATED AS SEPARATE PROPERTY.—A specific portion of property shall be treated as separate property.

(v) ELECTION.—An election under this paragraph with respect to any property shall be made by the executor on the return of tax imposed by section 2001. Such an election, once made, shall be irrevocable.

the distribution date just prior to her death and the date of her death. Instead, under the terms of the Share Number Two Trust, that "stub period" income passed to Mr. Shelfer's niece. We agree with petitioner.

By making a QTIP election, the executor of the estate treated a portion of the Share Number Two Trust as a QTIP trust. However, if this election was erroneous, and the trust was never a QTIP trust, the election to treat it as such was not valid. *Estate of Howard v. Commissioner,* 91 T.C. 329, 333 (1988), revd. 910 F.2d 633 (9th Cir. 1990); see also *Estate of Cavenaugh v. Commissioner,* 100 T.C. 407, 417 (1993). An erroneous election by the executor certainly cannot override the terms of the statute and make a trust that otherwise would not qualify as QTIP into a QTIP trust.

In *Estate of Howard v. Commissioner, supra* at 338, this Court held that for a trust to be a QTIP trust under section 2056(b)(7), "the income accumulated by the trust between the last date of distribution and the surviving spouse's death must be disposed of as the surviving spouse directs either by virtue of being payable to the surviving spouse's estate or through a power of appointment which includes a power to appoint to her estate". (Fn. ref. omitted.) A trust that provides that such income be distributed to the remainder beneficiary or beneficiaries simply does not do. *Id.* In so holding, this Court applied the test advanced by the taxpayer, which requires that two components be present in order to comply with section 2056(b)(7)(B)(ii)(I): (1) The surviving spouse must be entitled to all the income, and (2) distributions of income must be made at least annually. *Id.* at 334. We reinforce our prior holding today; the plain language of 2056(b)(7)(B)(ii)(I) provides: "The surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals".[5]

We are not unmindful that *Estate of Howard v. Commissioner, supra,* was reversed by a divided panel of the Court of Appeals for the Ninth Circuit. See *Estate of Howard v.*

---

[5] We believe *Estate of Howard v. Commissioner, supra,* was correctly decided, and reach the same result for substantially the same reasons. Although our opinion in *Estate of Howard v. Commissioner, supra,* was reversed by the Court of Appeals for the Ninth Circuit, we, as a National Court, are not obligated to follow the ruling of a Court of Appeals where appeal does not lie to that court. *Golsen v. Commissioner,* 54 T.C. 742 (1970), affd. on another issue 445 F.2d 985 (10th Cir. 1971). Appeal in the instant case lies to the Court of Appeals for the Eleventh Circuit. Sec. 7482(b)(1).

*Commissioner,* 910 F.2d 633 (9th Cir. 1990). In so doing, the Court of Appeals adopted a reading of section 2056(b)(7)(B) "consistent with the realities of trust administration." *Id.* at 635. The court determined that the statute did not require that the income that accumulates each day must be paid to the surviving spouse each day. We agree that section 2056(b)(7) does not impose as a condition of being a QTIP trust an unrealistic requirement that income must be paid to the surviving spouse on a daily basis. In fact, the statute does not require distributions more frequently than annually.[6] However, the statute also requires that the surviving spouse receive "all the income". The Court of Appeals stated that it suffices that "the spouse be entitled to all the income *at the time* of its annual or more frequent distribution." *Id.* (emphasis added). The statute itself imposes no such limitation. In effect, the court interpreted the statute to include the words, "at the time of its annual or more frequent distribution." This interpretation deemphasizes the fact that the surviving spouse was actually not entitled to receive a portion of the trust income, the stub period income. As noted in the dissent:

> Despite the fact that the majority reaches a felicitous result, the tax court's analysis appears literally correct. * * * While this may not comport with "the realities of trust administration," I would leave it to the Congress to correct unintended consequences of ambiguous language by technical amendment * * *. [*Id.* at 637 (Rymer, J., dissenting).]

With all due respect for the Court of Appeals for the Ninth Circuit, we do not agree with the majority opinion in *Estate of Howard v. Commissioner, supra,* that the plain language of section 2056(b)(7)(B) supports a reading that the surviving spouse is entitled to "*all* the income" accruing during her lifetime where he or she is not entitled to income accrued after the final distribution date. The statute states that the spouse must be entitled to "*all* the income". Sec. 2056(b)(7)(B)(ii)(I) (emphasis added); cf. *Estate of Doherty v. Commissioner,* 95 T.C. 446, 460–462 (1990), revd. and remanded on other grounds 982 F.2d 450 (10th Cir. 1992) (surviving spouse's interest was not "qualifying income interest for life" where surviving spouse was not entitled to all the income because

---

[6] Sec. 2056(b)(7)(B)(ii)(I) explicitly provides that the income must be distributed "annually or at more frequent intervals".

trustee had discretion to retain and accumulate income for remainder beneficiaries); *Wells v. United States,* 746 F. Supp. 1024, 1027–1028 (D. Haw. 1990) (residuary trust created by testator's will did not constitute "qualifying income interest for life" where trustee had discretion to pay part of the income to testator's children; surviving spouse was not entitled to all the income). The statute does not qualify the phrase "all the income" with any limitation such as "except income accruing after the last distribution date before his or her death". To the extent that the remainder beneficiary receives income earned on the corpus during the spouse's lifetime, as well as the corpus itself, the lifetime beneficiary has not received "all the income".

Although section 2056(b)(7) does not define the requirement that "the surviving spouse * * * [be] entitled to all the income from the property, payable annually or at more frequent intervals", we think the plain meaning of the statute is clear; *all* the income from a QTIP trust must be paid to the surviving spouse. The statutory language ordinarily is conclusive, absent a clear legislative intent to the contrary. *Consumer Prod. Safety Commn. v. GTE Sylvania, Inc.,* 447 U.S. 102, 108 (1980). We find no such legislative intent here.

The legislative history referenced by the Court of Appeals, which consists of portions of the House report, does not elucidate the statute. See *Estate of Howard v. Commissioner,* 910 F.2d at 636. The legislative history does not define "all the income". See H. Rept. 97–201, at 161 (1981), 1981–2 C.B. 352, 378.[7] The House report only states, in relevant part:

A qualifying income interest must meet several conditions. First, the spouse must be entitled for a period measured solely by the spouse's life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals * * *.

H. Rept. 97–201, *supra* at 161, 1981–2 C.B. at 378. If this statement is at all helpful, it is because it indicates that the surviving spouse must be entitled to all the income from the trust "for a period measured solely by the spouse's life". *Id.* The period therefore would not be measured by the annual or more frequent distribution dates, and would include the period between the last distribution date and the date of the

---

[7] See also S. Rept. 97–144, at 126–128 (1981), 1981–2 C.B. 412, 461–462; H. Conf. Rept. 97–215, at 247 (1981), 1981–2 C.B. 481, 507.

spouse's death. In *Estate of Howard v. Commissioner,* 91 T.C. at 334–337, Judge Tannenwald provides an excellent discussion of the legislative history of section 2056(b)(5) and (7), and we need not discuss it any further herein.

The fact that respondent's position is consistent with proposed regulations does not persuade us to adopt her view. The proposed regulations state: "an income interest will not fail to constitute a qualifying income interest for life solely because income between the last distribution date and the date of the surviving spouse's death is not required to be distributed to the surviving spouse or the surviving spouse's estate." Sec. 20.2056(b)–7(c)(1), Proposed Estate Tax Regs., 49 Fed. Reg. 21357 (May 17, 1984). Proposed regulations are not entitled to our deference, and in fact carry no more weight than an argument advanced by respondent on brief. *Estate of Howard v. Commissioner,* 91 T.C. at 337; *Laglia v. Commissioner,* 88 T.C. 894, 897 (1987); *Scott v. Commissioner,* 84 T.C. 683, 690 (1985). Respondent argues that the regulations, which have since been finalized, see sec. 20.2056(b)–7(d)(4), Estate Tax Regs., are now entitled to our deference. Respondent neglects to point out that the final regulations are effective with respect to decedents dying after March 1, 1994. Sec. 20.2056(b)–10, Estate Tax Regs. With respect to decedents dying on or before March 1, 1994, the executor may rely on any reasonable interpretation of the statutory provisions. *Id.* Accordingly, the final regulations are inapplicable to the instant case; we need not determine how we would decide the case if the final regulations were applicable.[8]

Respondent also determined that if she prevailed on her argument that a portion of the Share Number Two Trust was a QTIP trust, petitioner would be entitled to a credit for tax on prior transfers. See sec. 2013. Because we decided that issue in favor of petitioner, no credit is allowable.

We have considered the parties' other arguments, and find them to be without merit.

---

[8] We note that the House of Representatives recently passed a bill that would codify the rule in the final regulations dealing with "stub period" income, see sec. 20.2056(b)–7(d)(4), Estate Tax Regs., in the case of decedents dying after the date of the bill's enactment. Tax Simplification and Technical Corrections Bill of 1993, H.R. 3419, 103d Cong., 1st Sess. sec. 603(a)(1), (e) (1994). No inference is intended to be drawn from this provision with respect to the proper rule under existing law. H. Rept. 103–353, at 169 (1993).

To reflect the foregoing and certain computational adjustments,

*Decision will be entered under Rule 155.*

Reviewed by the Court.

HAMBLEN, CHABOT, COHEN, GERBER, WRIGHT, WHALEN, COLVIN, HALPERN, and CHIECHI, *JJ.,* agree with this majority opinion.

RUWE, *J.,* dissents.

SWIFT, *J.,* did not participate in the consideration of this opinion.

---

PARR, *J.,* dissenting: I respectfully dissent. Although I have joined in Judge Beghe's dissenting opinion, I write separately to propose an alternative theory which would uphold respondent without requiring us to overrule our prior precedent or to disagree with the Court of Appeals for the Ninth Circuit.

In *Estate of Howard v. Commissioner,* 91 T.C. 329 (1988), revd. 910 F.2d 633 (9th Cir. 1990), the period of limitations had not expired on either the husband's or wife's estate. The issue was simply in which estate the trust corpus should be included. There was never any doubt that it should be included in one estate or the other. Once the QTIP status was determined for the first decedent, the result as to the spouse automatically followed. Thus, although we were reversed by the Court of Appeals, both courts reached internally consistent results.

Here, under the majority opinion, we have an anomalous (and, in my view, unjust) result. Approximately $2,829,710 (the corpus of the Number Two Trust) escapes taxation altogether.

The majority claims the plain meaning of the statute compels the result it reaches. However, the Supreme Court has stated in *United States v. American Trucking Associations,* 310 U.S. 534, 543 (1940):

There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed

their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one "plainly at variance with the policy of the legislation as a whole" this Court has followed that purpose, rather than the literal words. * * * [Fn. ref. omitted.]

Here we have a result that is plainly at variance with the policy of the legislation as a whole. The legislative history shows that the intent of Congress was that "a husband and wife should be treated as one economic unit for purposes of estate and gift taxes." S. Rept. 97–144 (1981), 1981–2 C.B. 412, 461.

The intent to treat the husband and wife as one economic unit is further shown in the statutory scheme itself. Section 2056(b)(7)(B)(v) states that a QTIP election, once made, "shall be irrevocable." I believe that language reflects an intent to fix for all time and all purposes the tax status of an interest in property passing from the first decedent to the spouse, as elected by the first decedent's estate. It was never Congress' intent that the spouse could then contest that election after that very spouse had obtained the benefit of the use of the property, which would have otherwise been included in the first decedent's estate had the election not been made.

Here the election was made and allowed by the Internal Revenue Service, and now the beneficiary of that election (i.e., the spouse) is being allowed to revoke it.

I am aware that the estate of the second spouse is, technically, a different taxpayer than the estate of the first spouse. However, as shown by section 2044, it was not Congress' intent to allow the election to be challenged after the benefit had been enjoyed. That section provides that the value of the gross estate (of the second spouse) shall include the value of any property in which the decedent had a qualifying income interest for life. Sec. 2044(a). The provision applies to any property if a deduction was allowed with respect to the transfer of such property to the decedent under section 2056 by reason of subsection (b)(7). Sec. 2044(b)(1)(A). *That is exactly the situation we have before us.*

The majority finds that the QTIP election was improperly allowed by respondent in the husband's case, and therefore none of this applies. I believe we are straining at a gnat and swallowing a camel. The fact is, the deduction was claimed

and allowed, and the tax benefit was enjoyed by the very petitioner now before us.

Courts, including this one, have evolved judge-made doctrines such as estoppel, the duty of consistency, and the tax benefit rule to deal with similar situations of unjust enrichment. For example, the tax benefit rule provides that an amount deducted from gross income in one year is included in income in a subsequent year if an event occurs in the subsequent year that is fundamentally inconsistent with the premise on which the deduction had previously been based. *Hillsboro Natl. Bank v. Commissioner,* 460 U.S. 370 (1983).

Here we have two different taxpayers, but a single economic unit and a single pot of money. Under these circumstances, I would hold that the QTIP election, once made and allowed (whether technically correct or not), is irrevocable and determinative.

PARKER and JACOBS, *JJ.,* agree with this dissent.

———————————

WELLS, *J.,* dissenting: I respectfully dissent from the majority opinion in the instant case. I agree with Judge Beghe that the majority's holding incorrectly interprets a remedial statute that Congress intended to be interpreted broadly and is contrary to the reasonable interpretation of the Court of Appeals for the Ninth Circuit, the Commissioner's regulations, and the weight of critical commentary. I, however, wish to set forth an additional reason why I believe the Court, in *Estate of Howard v. Commissioner,* 91 T.C. 329 (1988), revd. 910 F.2d 633 (9th Cir. 1990), incorrectly interpreted section 2056(b)(7).

In *Estate of Howard v. Commissioner, supra* at 335, the Court stated that "the legislative history of section 2056(b)(7) clearly indicates that 'qualified terminable interest property' must meet the requirements of section 20.2056(b)–5(f), Estate Tax Regs.", citing H. Rept. 97–201, at 161 (1981), 1981–2 C.B. 352, 378, and Staff of Joint Comm. on Taxation, General Explanation of the Economic Recovery Tax Act of 1981, at 435 (J. Comm. Print 1981). Based on its reading of section 20.2056(b)–5(f)(8), Estate Tax Regs., the Court held that

to qualify as a "qualified income interest for life," the "income accumulated by the trust between the last date of distribution and the surviving spouse's death must be disposed of as the surviving spouse directs either by virtue of being payable to the surviving spouse's estate or through a power of appointment which includes a power to appoint to her estate or to such other persons as she may direct." [*Estate of Howard v. Commissioner,* 91 T.C. at 338 (fn. ref. omitted).]

The Court also stated that a disposition of the income that accumulates in the trust between the date of the last distribution and the surviving spouse's death (hereinafter the stub interest) to the surviving spouse's estate pursuant to a provision in a trust instrument or through the operation of State law, if the trust instrument is silent or unclear on the issue, satisfies the requirement of section 2056(b)(7). *Id.* at n.8. Although I agree with the Court's conclusion in *Estate of Howard v. Commissioner, supra,* that "qualified terminal interest property" must meet the requirements of section 20.2056(b)–5(f), Estate Tax Regs., as explained below, my reading of the statute and regulations would lead to the opposite result; namely, that section 2056(b)(7) permits the stub interest to be appointed by or paid to someone other than the surviving spouse without failing to satisfy its requirements.

An income interest may be a "qualifying income interest for life" under section 2056(b)(7) only if: (1) The surviving spouse is entitled to all of the income from the property, payable annually or at more frequent intervals and (2) no person has a power to appoint any part of the property to any person other than the surviving spouse. Sec. 2056(b)(7)(B)(ii). Section 2056(b)(7) defines "property" as "an interest in property." Sec. 2056(b)(7)(B)(iii). That definition includes the income interest in the property that the surviving spouse must be entitled to receive for life under section 2056(b)(7)(B)(ii)(I). The stub interest is such an income interest.

The first sentence of the flush language of section 2056(b)(7)(B) states, in pertinent part, that the second requirement of section 2056(b)(7)(B), namely, that no person may have a power to appoint any part of the property to any person other than the surviving spouse, does "not apply to a power exercisable only at or after the death of the surviving spouse." As I read the flush language, any person may

appoint any part of the property, including the stub interest, to a person other than the surviving spouse at or after the death of the surviving spouse. Consequently, the flush language of section 2056(b)(7)(B) permits such a power over the stub interest without violating the requirement that the surviving spouse be entitled to all of the income from the property for life.

Section 20.2056(b)–5(f)(8), Estate Tax Regs., supports such an interpretation of section 2056(b)(7). To qualify for the marital deduction under section 2056(b)(5) for property passing to the surviving spouse, the surviving spouse must not only be entitled to all of the income from the property for life, but the surviving spouse must also have a power to appoint the property. Section 20.2056(b)–5(f)(8), Estate Tax Regs., provides, in pertinent part:

as respects the income for the period between the last distribution date and the date of the spouse's death, it is sufficient if that income is subject to the spouse's power to appoint. Thus, if the trust instrument provides that income accrued or undistributed on the date of the spouse's death is to be disposed of as if it had been received after her death, *and if the spouse has a power of appointment over the trust corpus, the power necessarily extends to the undistributed income.* [Emphasis added.]

Because section 2056(b)(5) requires that the surviving spouse have de facto legal ownership of the underlying property (by having a life estate with a power of appointment over the remainder) in order for the testator's estate to qualify for a marital deduction, it is not surprising that section 20.2056(b)–5(f)(8), Estate Tax Regs., requires that the surviving spouse must, at a minimum, have a power of appointment over the stub interest as well.

Section 2056(b)(7) differs from section 2056(b)(5) in that it specifically permits a person to appoint any part of the property to someone other than the surviving spouse at or after the death of the surviving spouse. Sec. 2056(b)(7)(B). In *Estate of Howard v. Commissioner, supra,* we held that section 2056(b)(7) is to be interpreted in conjunction with the requirements of section 20.2056(b)–5(f)(8), Estate Tax Regs. It follows that, because section 2056(b)(7) specifically permits a person to appoint any part of the property to someone other than the surviving spouse at or after the death of the surviving spouse, such person is permitted to have the power

to appoint the stub interest as well, without violating section 2056(b)(7). In short, the flush language of section 2056(b)(7)(B) permits a person to appoint any interest in the property, including the stub interest, at or after the death of the surviving spouse.

Section 20.2056(b)–5(f)(8), Estate Tax Regs., specifically states that, if the surviving spouse is given a power of appointment over the trust corpus, the power of appointment "necessarily extends to the undistributed income"; i.e., the surviving spouse has the power to appoint the stub interest. As section 2056(b)(7) is to be interpreted in accordance with section 20.2056(b)–5(f)(8), Estate Tax Regs., the rationale of that provision (namely, that a power of appointment over a trust corpus includes the power to appoint the stub interest) would also apply to section 2056(b)(7). Consequently, the person who has the power to appoint the corpus of a trust at or after the death of the surviving spouse must necessarily have the power to appoint the stub interest as well. I believe that if the statute allows the stub interest to be appointed to someone other than the surviving spouse at or after her death without disqualifying the property as qualified terminable interest property, then a testamentary gift of the stub interest should not disqualify the property as well.

In the instant case, Mr. Shelfer's will required the trustee of the Share Number Two Trust to pay the stub interest at decedent's death to Mr. Shelfer's niece. Based on the foregoing analysis, I believe that section 2056(b)(7) and section 20.2056(b)–5(f)(8), Estate Tax Regs., allow Mr. Shelfer's will to do so without running afoul of section 2056(b)(7). Consequently, I would hold that the Share Number Two Trust meets the requirements of section 2056(b)(7) and therefore must be included in decedent's gross estate under section 2044.

PARKER, JACOBS, PARR, and BEGHE, *JJ.,* agree with this dissent.

———————

BEGHE, *J.,* dissenting: The majority's decision in this case, if allowed to stand, means that, for Quincy State Bank and

its clients, "The game is done! I've won, I've won!"[1] They took advantage of respondent's lack of vigilance in a way that contrasts strongly with what the similarly related estates did in *Estate of Howard v. Commissioner,* 91 T.C. 329 (1988), revd. 910 F.2d 633 (9th Cir. 1990).

Although the executors of the predeceasing husband's estate in *Estate of Howard* originally filed an estate tax return making the QTIP election, they then filed a timely amended return disclaiming the trust's eligibility for the QTIP marital deduction—because of the trust instrument's treatment of undistributed income—and paid the additional estate tax. Acting consistently with that approach, the estate of the surviving spouse did not include the value of the trust in her gross estate and claimed a previously taxed property credit under section 2013 for the actuarial value of her interest in the trust, a credit that would not have been allowable if the trust had qualified for the marital deduction. Post mortem planning considerations no doubt dictated the coordinated positions taken by the two related estates in *Estate of Howard,* but at least those positions were consistent.

In this case, Quincy State Bank, as the fiduciary of the related estates of Mr. Shelfer and decedent, has taken inconsistent positions: Mr. Shelfer's estate elected and was allowed the QTIP marital deduction for the property in the Share Number Two Trust; decedent's estate now argues that none of the Share Number Two Trust property is included in her gross estate under section 2044.[2] The period of limitations on assessment of an estate tax deficiency against Mr. Shelfer's estate has expired, and the majority opinion allows the whipsaw. Quincy State Bank preferred to let the statute run against Mr. Shelfer's estate, rather than avail itself of the closing agreement procedure[3] that respondent promptly put in place in an effort to quell the uncertainty about allow-

---

[1] Coleridge, "The Rime of the Ancient Mariner", pt. III, st. 12.

[2] Sec. 2044(a) provides that the gross estate includes any property to which sec. 2044 applies *in which the decedent had a qualifying income interest for life.* Thus, although sec. 2044 applies to any property for which a QTIP deduction was allowed under sec. 2056(b)(7) with respect to the transfer of such property to the decedent, sec. 2044(b)(1)(A), the property is not included in the decedent's gross estate where the decedent did not have a qualifying income interest for life in the property, *Estate of Cavenaugh v. Commissioner,* 100 T.C. 407, 417 (1993); *Estate of Howard v. Commissioner,* 91 T.C. 329, 333 (1988), revd. on other grounds 910 F.2d 633 (9th Cir. 1990).

[3] Although respondent issued a closing letter to Mr. Shelfer's estate, this was not a closing agreement within the purview of sec. 7121. *Schwager v. Commissioner,* 64 T.C. 781, 789 (1975).

ability of the marital deduction created by our decision in *Estate of Howard v. Commissioner, supra.* See Notice 89–4, 1989–1 C.B. 624, as extended by Notice 90–46, 1990–2 C.B. 337.[4]

Our opinion in *Estate of Howard v. Commissioner, supra,* was criticized by private practitioners,[5] and, of course, was reversed on appeal, *Estate of Howard v. Commissioner,* 910 F.2d 633 (9th Cir. 1990), revg. 91 T.C. 329 (1988). Although it's too soon to say the tide of appellate review is running against us, it's not too soon to subject our position to critical reexamination. This the majority opinion does not do.

*History of Marital Deduction and QTIP*

The marital deduction, as enacted in 1948, was intended to codify the long-standing notion that marital property belongs to the unitary estate of both spouses, and in so doing, postpone the payment of estate tax during the lifetime of the surviving spouse. *Estate of Cavenaugh v. Commissioner,* 100 T.C. 407, 415 (1993); see also *Estate of Clayton v. Commissioner,* 976 F.2d 1486, 1491, 1492 n.26 (5th Cir. 1992), revg. and remanding 97 T.C. 327 (1991). However, section 2056(b)(1) provided for an exception—as it continues to do—

---

[4] Respondent originally published Notice 89–4 in 1989–2 I.R.B. 14 (Jan. 9, 1989). Respondent then missed the boat by issuing the closing letter confirming the allowance of the marital deduction in Mr. Shelfer's estate on May 10, 1989, and failing, prior to expiration of the period of limitations on assessment of an estate tax deficiency against Mr. Shelfer's estate, May 13, 1990, to reopen the estate tax audit of Mr. Shelfer's estate and initiate the settlement procedure under the notices.

[5] See Covey, "Recent Developments Concerning Estate, Gift and Income Taxation—1988", in The Twenty-Third Annual Philip E. Heckerling Institute on Estate Planning, par. 124.3(2), at 1–168 (Gaubatz ed. 1989); Blattmachr & Blattmachr, "A New Quirk in QTIPS: The Estate of Rose Howard", 127 Trusts & Estates No. 11, at 43 (1988); Evans, "Round Two: The IRS Responds to Howard", 3 Probate & Property No. 4, at 12 (1989). For some comments to the contrary from the vale of academe, see Odeku, "Section 2056(b)(7) Qualified Terminable Interest Property Marital Deduction in *Estate of Rose D. Howard v. Commissioner*", 44 Tax Law. 907 (1991), and O'Connor, "The Qualified Terminal Property Trust: Should Proposed Regulation Be Followed?", 54 Mo. L. Rev. 1079 (1989).

There is something to be said for the view, to which all the commentators agreed, that professional prudence, in the face of the Tax Court's decision in *Estate of Howard v. Commissioner,* 91 T.C. 329 (1988), revd. 910 F.2d 633 (9th Cir. 1990), where wills and trusts had been drafted in reliance on the proposed regulation and could be changed, and where State law did not provide that undistributed income on hand at death would be paid to the deceased beneficiary's estate, dictates that they should have been amended to provide that undistributed income should be payable to the life beneficiary's estate or made subject to her general power of appointment. Where this change could not be made because the testator or grantor had died, consideration could have been given to having a construction proceeding to excise the offending language. But the availability of these remedies does not relieve this Court of the responsibility of critically reexamining the position it took in *Estate of Howard,* in cases such as this in which such remedies were not availed of.

that denies the marital deduction if the property passing to the surviving spouse is terminable interest property. With the passage of time, Congress became aware that the marital deduction, as originally enacted, was posing a dilemma for many testators that was unacceptable, both as social policy and as tax policy: provide the maximum marital deduction to the surviving spouse at the risk that he or she would consume or otherwise dissipate the marital property to the detriment of their children; or instead ensure that, on the death of the surviving spouse, the property would pass to the children at the cost of losing the marital deduction in the estate of the predeceasing spouse. *Estate of Cavenaugh v. Commissioner, supra* at 415; see also *Estate of Clayton v. Commissioner, supra* at 1492.

In 1981, Congress eliminated the dilemma by enacting the QTIP provision. The QTIP provision allows the predeceasing spouse to leave the surviving spouse a life interest in property that qualifies for the marital deduction without creating the risk that the property will not pass to their children on the death of the surviving spouse. H. Rept. 97–201 (1981), 1981–2 C.B. 352, 377–378; see also *Estate of Clayton v. Commissioner, supra* at 1492; *Estate of Howard v. Commissioner,* 910 F.2d at 636. The price to be paid for this privilege, consistent with "'An essential feature of the Marital Deduction from its very beginning, * * * [is] that any property of the first spouse to die that passed untaxed to the surviving spouse *should be* taxed in the estate of the surviving spouse.'" *Estate of Cavenaugh v. Commissioner, supra* at 416 (quoting *Estate of Clayton v. Commissioner, supra* at 1491) (emphasis added).

As enacted, the QTIP provision is a counterexception to the general exception of section 2056(b)(1), which denies a marital deduction to the gross estate for terminable interest property that passed from the deceased spouse to the surviving spouse. *Estate of Clayton v. Commissioner, supra* at 1494; *Estate of Cavenaugh v. Commissioner, supra* at 417 n.5. Accordingly, the QTIP provision is to be read liberally and interpreted broadly, consistently with its remedial objective. See *Estate of Clayton v. Commissioner, supra; Estate of Howard v. Commissioner,* 910 F.2d at 633.

*Reconsidering the Arguments*

The majority choose to continue to interpret section 2056(b)(7) narrowly. While the majority acknowledge that the statute "does not define the requirement that 'the surviving spouse * * * [be] entitled to all the income from the property,'" majority op. p. 16, they nevertheless conclude that the Share Number Two Trust does not qualify as a QTIP trust because the "stub" income was not payable to decedent's estate or disposed of by her power of appointment. In so doing, the majority fail to confront the arguments of the Court of Appeals for the Ninth Circuit that we erroneously construed the QTIP provision, section 2056(b)(7), by treating it as being identical with section 2056(b)(5), and that we ignored the reasonable realities of trust administration.

In *Estate of Howard v. Commissioner*, 91 T.C. at 334, we looked to the legislative history of section 2056(b)(5) for guidance in interpreting the "nearly identical" language found in the QTIP provision. While the general rule is that the same words in different parts of a statute are accorded the same meaning, *id.* (citing *Sorenson v. Secretary of the Treasury*, 475 U.S. 851, 860 (1986)), the legislative history of the two statutory provisions establishes that the intent of QTIP differs from that of section 2056(b)(5). The reason for the requirement, under section 2056(b)(5) and the regulations thereunder, that the surviving spouse have a power of appointment over any undistributed income in the trust was to assure that the undistributed income would be subject to estate tax in the surviving spouse's estate. See Covey, "Recent Developments Concerning Estate, Gift and Income Taxation—1988", in The Twenty-Third Annual Philip E. Heckerling Institute on Estate Planning, par. 124.3(2), at 1–172 (Gaubatz ed. 1989). However, section 2044 includes QTIP property in the surviving spouse's estate, thereby producing the correct tax result and making such a power unnecessary. *Id.;* see also Evans, "Round Two: The IRS Responds to Howard", 3 Probate & Property No. 4, at 14 (1989). Accordingly, our decision in this case is not constrained by the legislative history of section 2056(b)(5). See majority op. p. 16.

The majority argue that section 2056(b)(7) is unambiguous (majority op. pp. 14, 16) when it provides that "The surviving

spouse is entitled to all the income from the property".[6] However, in *Estate of Howard v. Commissioner,* 91 T.C. at 333, we implicitly acknowledged that the statutory language was ambiguous when we had recourse to the legislative history and concluded that "[the taxpayer's] is the more reasonable reading of the statute." Moreover, the Court of Appeals for the Ninth Circuit also found the phrase to be ambiguous, as evidenced by its conclusion that "the statute recognizes a QTIP in a trust where the spouse is entitled to all of the income that is at least payable annually." *Estate of Howard v. Commissioner,* 910 F.2d at 635. Thus, we are free to accept the interpretation of the statute by the Court of Appeals for the Ninth Circuit if we find it more persuasive than petitioner's.

Contrary to the majority opinion, the Court of Appeals for the Ninth Circuit, in *Estate of Howard v. Commissioner,* 910 F.2d at 635, did not err when it concluded that the surviving spouse need be entitled to no more than all the income at the times of its annual or more frequent distribution. Although the statute does not explicitly impose such a limitation, majority op. p. 15, neither does the statute disavow it, see *Estate of Howard v. Commissioner,* 910 F.2d at 635. The Court of Appeals for the Ninth Circuit, by reading such a limitation into the statute, properly adopts the approach that the QTIP provision is to be interpreted broadly. The approach of the Court of Appeals for the Ninth Circuit also does not, as the majority incorrectly assume, glide over the fact that the decedent or her estate did not receive a portion of the Shared Number Two Trust income accumulated during her lifetime. This is because, for estate tax purposes, any income from QTIP property accumulated from the date of last distribution to the date of the surviving spouse's death is included in the surviving spouse's gross estate. Sec. 20.2044–1(d)(2), Estate Tax Regs.[7] Thus, while "stub" income was not

---

[6] If the statute were unambiguous, the Court and the Commissioner would be required to give effect to clearly expressed Congressional intent, and any final regulation that was inconsistent with that intent would be invalid. See *Chevron U.S.A. v. National Resources Defense Council,* 467 U.S. 837, 842–843 (1984). The majority opinion unnecessarily casts doubt on the validity of what is now the final regulation, sec. 20.2056(b)–7, Estate Tax Regs. In so doing, the majority opinion raises the specter that the Court is of the view that the final regulation is invalid and that the House bill, referred to by the majority (majority op. note 8), will have to be enacted in order to resolve the problem generally, if only prospectively.

[7] I do realize that sec. 20.2044–1(d)(2), Estate Tax Regs., is effective with respect to decedents who die after Mar. 1, 1994, and that it was a proposed regulation on the date of decedent's

paid to the decedent, the regulations under section 2044 treat the decedent as having been entitled to such income, and cause it to be included in the surviving spouse's gross estate for estate tax purposes.[8]

Section 2056(b)(7) merely requires that the surviving spouse be entitled to all the income payable during her lifetime, not that she be paid all the income during her lifetime. Inasmuch as the decedent is properly treated by section 2044 as having been entitled to the "stub" income for estate tax purposes, the interpretation by the Court of Appeals for the Ninth Circuit of section 2056(b)(7) is reasonable and proper. Because that interpretation better comports with the realities of trust administration and is more consistent with a view that the QTIP provision should be read liberally and interpreted broadly, consistently with its remedial objective, I respectfully dissent from the majority opinion. I also join and applaud Judge Wells' analysis of the first sentence of the flush language of section 2056(b)(7)(B).

PARKER, JACOBS, PARR, and WELLS, *JJ.,* agree with this dissent.

---

death and the dates on which petitioner filed its estate tax return and the petition in this case. However, I find it to be a reasonable and persuasive interpretation of an otherwise ambiguous statute.

[8] It would appear that the undistributed income ultimately payable to the remainderman would be "income in respect of a decedent" entitled to the sec. 691(c) deduction for the estate tax attributable to its inclusion in the beneficiary's estate under sec. 2044.