ESTATE OF MARIA PROIOS, DECEASED, MARIA TAVLARIOS AND MICHAEL FRANGOS, CO-EXECUTORS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tavlarios v. Commissioner (Estate of Proios)
Docket No. 15452-93
United States Tax Court
T.C. Memo 1994-442; 1994 Tax Ct. Memo LEXIS 450; 68 T.C.M. (CCH) 645; August 29, 1994, Filed; As Corrected September 1, 1994 *450 Decision will be entered under Rule 155. Held: The fair market value of certain real estate in Piraeus, Greece, owned by D on the date of her death was $ 531,036. Held, further, D's estate is entitled to a $ 73,900 credit for the payment of foreign death taxes. Held, further, D's estate is liable for an $ 89,074 addition to tax for the failure to file timely a Federal estate tax return. For petitioner: Laurence E. Curran and Michael G. Chalos. For respondent: Catherine R. Chastanet. LARO
LARO
MEMORANDUM FINDINGS OF FACT AND OPINION LARO, Judge: This case is before the Court pursuant to a petition filed on behalf of the Estate of Maria Proios to redetermine respondent's determination of a $ 220,255 deficiency in its Federal estate tax liability and an $ 89,074 addition thereto under section 6651(a)(1). Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year of death. Rule references are to the Tax Court Rules of Practice and Procedure. Petitioner is the Estate of Maria Proios (decedent). Maria Tavlarios and Michael Frangos are collectively referred to as coexecutors and are separately referred to as Tavlarios *451 and Frangos, respectively. Following a concession by petitioner that it was not entitled to $ 8,000 in deductions reported on its Federal estate tax return, we must decide: 1. Whether the fair market value of certain real estate owned by decedent on the date of her death was $ 593,335 as determined by respondent. We hold that the value was $ 531,036. 2. Whether petitioner is entitled to a $73,900 credit for the payment of foreign death taxes. We hold that it is. 3. Whether petitioner is liable for an addition to tax for the failure to file timely a Federal estate tax return. We hold that it is. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations and attached exhibits are incorporated herein by this reference. Decedent was a resident of the State of New York at the time of her death on February 11, 1989. Coexecutors resided in the State of New York when the petition was filed. Decedent owned two contiguous, rectangular pieces of real estate (collectively referred to as the Real Estate) in Piraeus, Greece, [1] on the date of her death. Three semi-derelict buildings, which were dilapidated and needed to be razed, were located thereon. *452 The separate lots of the Real Estate were located at 109 Notara Street and 22 II Merarchias Street, respectively, and together the lots formed an "L" shaped parcel of land. The area surrounding the Real Estate was one of the oldest sections of Piraeus and had undergone steady development as a prime office location for approximately 50 years. Coexecutors retained the law firm of Chalos, English, and Brown (Chalos) to probate decedent's will and retained an attorney in Greece (Foreign Attorney) to handle decedent's estate for Greek tax purposes. Coexecutors also retained an accountant, Sanford Fine (Fine), to prepare decedent's Federal estate tax return. Fine was decedent's personal accountant *453 before her death, and he was believed to be the most knowledgeable person with respect to decedent's finances. Andrew Glen Weiss (Weiss) was the attorney at Chalos assigned to handle petitioner's case. Weiss had not handled or probated an estate prior to this assignment. Weiss and Fine consulted on a regular basis regarding information that was necessary for the preparation of decedent's estate tax return. Weiss also consulted with Foreign Attorney regarding decedent's assets in Greece. [2] *454 Weiss also had regular contacts with coexecutors regarding collection of information. Coexecutors spoke English and Greek, and they were able to act as liaisons between Weiss and the relevant people in Greece. Tavlarios also helped Weiss assemble decedent's assets, provided him with all of decedent's records that Tavlarios had in her possession, and provided him with the names of the banks that she dealt with on decedent's behalf. [3]
Petitioner filed an inheritance tax return with the Greek Government on or before October 11, 1989, that reported the Real Estate and certain funds deposited in Greece as owned by decedent at her death. For Greek inheritance tax purposes, the Real Estate was valued as of February 1989 at 28,140,900 drachmas, or approximately $ 175,880. [4] On October 11, 1989, the Bureau of Taxation of Athens issued an order for payment to its tax collector computing the amount of payment due as 15,129,843 drachmas, for the Inheritance and/or Gift Tax or Dowry Tax of petitioner. Tavlarios was listed on this order as one of the taxpayers. [5]
*455 On March 16, 1990, Fine sent a letter to respondent requesting an extension of time to file decedent's Federal estate tax return. [6] The letter stated that an extension was necessary primarily because: (1) "certain property included in the estate was located in Athens, Greece, which resulted in language communication problems with remote beneficiaries", and (2) decedent "lived alone at the time of her death". The letter also stated that a $ 50,000 check was enclosed in payment of decedent's estimated Federal estate tax liability. Respondent cashed this $ 50,000 check shortly after receipt. The coexecutors filed decedent's Federal estate tax return on June 28, 1990. [7] The return listed decedent's gross estate as follows: Property in United States
Cash in joint bank accounts $ 177,960  Cash in decedent's bank account 99,751
Stocks and bonds 198,134
Household contents 6,200
Mortgage receivable 123,348
[8] Residence in Long Beach, New York  264,500
$ 869,893  Property in Greece
Personal property $ 1,562  Funds on deposit 96,475
Real Estate 374,690
$ 472,727  Gross estate
$ 1,342,620
*456 After respondent received decedent's Federal estate tax return, respondent's Holtsville, New York, office mailed petitioner a bill for $ 99,097.93. The bill listed that petitioner owed: (1) An underpayment of $ 49,995, (2) a late filing penalty of $ 30,609.45, (3) a late payment penalty of $ 5,691.66, and (4) interest of $ 12,801.82. Weiss replied to this bill by sending correspondence to the Holtsville office stating that: (1) Decedent's Federal estate tax was fully paid because Fine had remitted a $ 50,000 check with his request for extension dated March 16, 1990, and (2) any penalty that had been assessed should be abated because petitioner had made a "good faith" attempt to comply with its obligations under the Internal Revenue Code. The Holtsville office adjusted petitioner's account by crediting *457 the account for a decrease in penalties of $ 30,609.45 and $ 4,691.68, and a decrease in interest of $ 3,802.02, and the Holtsville office sent petitioner a bill for the balance due of $ 8,797.54. [9] Petitioner mailed the Holtsville office a check for $ 8,797.54 with a letter from Weiss stating that he was enclosing a check "representing full and complete payment of said penalties and interest." Respondent cashed the check. In March 1991, petitioner sold the Real Estate for approximately $ 810,810 to Teodomi Construction and Technical Company, Ltd. (Teodomi). Teodomi also acquired another piece of real estate (the Corner Lot), located at the corner of Notara and II Merarchias Streets. The Corner Lot was *458 adjacent to the Real Estate, and Teodomi intended to develop it and the Real Estate into the site of one office building. The Corner Lot was too small to develop without the Real Estate. On or after March 18, 1993, petitioner filed with respondent a Form 706CE, Certificate of Payment of Foreign Death Tax, listing the payment of 13,616,860 drachmas to the Greek Government with respect to property located in Greece that was owned by decedent at the time of her death. Form 706CE was signed by coexecutors, but was not certified by a representative of the Greek Government. According to the relevant instructions to Form 706CE, which were contained on the form, the form should have been signed by a certifying representative of Greece or, alternatively, coexecutors should have attached a statement under penalties of perjury to the effect that the foreign government refused to certify the form. Respondent determined that the fair market value of the Real Estate on the date of decedent's death was $ 593,335. Respondent also determined that petitioner was not entitled to the $ 73,900 foreign tax credit shown on decedent's Federal estate tax return because respondent had not received evidence *459 that the foreign death tax was actually paid. [10] Respondent further determined that petitioner was liable for an $ 89,074 addition to tax because coexecutors had not filed decedent's estate tax return within the time prescribed by law, and had not shown that the delay was due to reasonable cause. OPINION Property includable in a decedent's gross estate is included at its fair market value on either: (1) The date of the decedent's death or (2) the alternate valuation date as provided under section 2032. Secs. 2031(a), 2032(a); sec. 20.2031-1(b), Estate Tax Regs. Fair market value is a question of fact, with the trier of fact having the duty to weigh all relevant evidence of value and to draw appropriate inferences. Commissioner v. Scottish Am. Inv. Co., 323 U.S. 119, 123-125 (1944); *460 Helvering v. National Grocery Co., 304 U.S. 282, 294 (1938); Hamm v. Commissioner, 325 F.2d 934, 938 (8th Cir. 1963), affg. T.C. Memo. 1961-347; Skripak v. Commissioner, 84 T.C. 285, 320 (1985); Zmuda v. Commissioner, 79 T.C. 714, 726 (1982), affd. 731 F.2d 1417 (9th Cir. 1984). Fair market value represents the price that a willing buyer would pay a willing seller, both persons having reasonable knowledge of all the relevant facts and neither person being under any compulsion to buy or to sell. Sec. 20.2031-1(b), Estate Tax Regs.; see also United States v. Cartwright, 411 U.S. 546, 551 (1973); Gillespie v. United States, 23 F.3d 36 (2d Cir. 1994); Estate of Hall v. Commissioner, 92 T.C. 312, 335 (1989). The willing buyer and the willing seller are hypothetical persons, instead of specific individuals or entities, and the characteristics of these hypothetical persons are not necessarily the same as the personal characteristics *461 of the actual seller or a particular buyer. Estate of Bright v. United States, 658 F.2d 999, 1005-1006 (5th Cir. 1981); Estate of Newhouse v. Commissioner, 94 T.C. 193, 218 (1990). Fair market value is determined as of the valuation date, and no knowledge of future events affecting the value, the occurrence of which was not reasonably foreseeable on the valuation date, is given to the hypothetical persons. Sec. 20.2031-1(b), Estate Tax Regs; see also Estate of Newhouse v. Commissioner, supra at 218. Fair market value reflects the highest and best use of the property on the valuation date. Fair market value takes into account special uses that are realistically available due to the property's adaptability to a particular business. Mitchell v. United States, 267 U.S. 341, 344-345 (1925); Stanley Works v. Commissioner, 87 T.C. 389, 400 (1986). Fair market value is not affected by whether the owner has actually put the property to its highest and best use. The reasonable and objective possible uses for the property control *462 the valuation thereof. United States v. Meadow Brook Club, 259 F.2d 41, 45 (2d Cir. 1958); Stanley Works v. Commissioner, supra at 400. Respondent determined that the fair market value of the Real Estate on the date of decedent's death was $ 593,335. Respondent called an expert witness, Nicholas H. Chatzitsolis (Expert), to testify as to the Real Estate's value. Respondent also submitted Expert's report. See Rule 143(f). Expert is an expert in valuing real estate located in Greece. Expert holds a bachelor of science degree in land administration from the North East London University in Great Britain and a masters of science degree in urban land appraisal from the University of Reading in Great Britain. Expert is a professional associate of the Royal Institution of Chartered Surveyors of Great Britain, General Practice and Valuation Division and a member of the Greek Technical Chamber City and Regional Planning Division. Expert has been in the real estate industry for over 10 years, and he has been employed most recently in a professional capacity valuing and appraising commercial land and buildings: (1) Since *463 1987 with the Greek Public Estates Office, an organization that manages and administers all public real estate in Greece, and (2) since 1990 with Lambert Smith Hampton Hellas S.A. (Lambert), a multinational firm that is one of the largest commercial property consultants headquartered in the United Kingdom. Expert has testified in British and Greek courts as an expert on property appraisals, and he has testified in courts as an expert on public estate disputes. Expert is currently a director of Lambert working in its Athens office as an employee responsible for valuation matters. Expert has performed over 50 appraisals of property in Greece using the method of valuation that he used to ascertain the fair market value of the Real Estate in the instant case. Expert testified that the comparable sales valuation method generally is the best method of valuation for land. Expert also testified, however, that the Greek real estate market in Piraeus does not lend itself to the comparable sales method of valuation because Piraeus is highly developed and has very little vacant land. Greece has no central location where one can secure accurate selling prices of real estate, and the actual *464 selling prices of property are highly confidential and difficult to ascertain. Expert determined the value of the Real Estate by taking the average of the Real Estate's value as determined under the residual method of valuation and the counter performance method. [11] *465 Expert applied these two methods based on the following two independent scenarios: (1) He assumed that the Real Estate would be developed by itself and (2) he assumed that the Corner Lot would first be acquired and then the Corner Lot and the Real Estate would be developed as a single plot of land. [12] Expert determined the fair market value of the Real Estate by taking the lower of the averages under the two scenarios and converting it to U.S. dollars by using the rate of exchange in February 1989. [13] As he stated at trial, and as shown in his report, Expert determined that the Real Estate was worth $ 556,000 as of February 11, 1989. [14]
Expert was able to ascertain that the dimension of the Real Estate was 271.60 meters squared in 1985 and 253.32 meters squared in 1991. Expert, however, was unable to verify the exact dimension of the Real Estate on the date of decedent's death. Expert guessed that the dimension of the Real Estate on the date of decedent's death was the larger amount; i.e., 271.60 meters squared. Petitioner contacted two experts to prepare reports on the value of the Real Estate. Neither of these experts was present *466 at trial. Instead, petitioner called a witness, Eric T. Reeps (Reeps), solely for the purpose of testifying to the incorrectness of Expert's opinion. [15] Reeps testified that the best method to value land would be the comparable sales method, and the second best method would include a residual sales method. Reeps did not object to Expert's use of the residual method, given the facts of this case. We need not follow an expert's opinion when it is contrary to our judgment. Estate of Kreis v. Commissioner, 227 F.2d 753, 755 (6th Cir. 1955), *467 affg. T.C. Memo. 1954-139. We may adopt or reject his or her opinion in its entirety whenever we believe it is appropriate. Helvering v. National Grocery Co., 304 U.S. 282, 294-295 (1938). We may also refuse to adopt his or her opinion in its entirety, but choose to be selective in accepting certain portions of the opinion. Parker v. Commissioner, 86 T.C. 547, 562 (1986). Petitioner bears the burden of proving that respondent's determination of the value of the Real Estate is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Estate of Gilford v. Commissioner, 88 T.C. 38, 50-51 (1987). We find Expert very credible and agree with his opinion and report in most regards. [16] We disagree with Expert, however, to the extent that he guessed that the dimension of the Real Estate in 1989 equaled the larger of the dimensions in 1985 and 1991. We believe that Expert should have attempted to determine the exact dimension at the time of decedent's death. Given that the dimension of the Real Estate was 271.60 meters squared in 1985 and *468 253.32 meters squared in 1991, we assume that the "shrinkage" occurred ratably over the 6-year period from 1985 to 1991. Thus, we find that the dimension of the Real Estate in 1989 was 259.41 meters squared, or 4.49 percent less than the dimension "guessed at" by Expert. Accordingly, we reduce Expert's fair market value of $ 556,000 by 4.49 percent and arrive at a fair market value of $ 531,036 at the time of decedent's death. Respondent also determined that petitioner is not entitled to a $ 73,900 foreign tax credit shown on decedent's Federal estate tax return. A tax is imposed on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States. Sec. 2001(a). A credit is allowed against *469 this tax for the amount of any estate, inheritance, legacy, or succession taxes actually paid to a foreign country in respect to property situated within that foreign country and included in the decedent's gross estate. Sec. 2014(a). Petitioner paid 13,616,860 drachmas to the Greek Government for estate taxes owed on decedent's estate. [17] As we understand respondent's argument, petitioner is not entitled to a credit for this payment because petitioner has failed to prove that it will not be refunded any or all of the 13,616,860 drachmas. [18] To this end, respondent contends, petitioner failed to have an authorized representative of Greece certify Form 706CE and failed to prove at trial that it would not be entitled to a refund. *470 We disagree with respondent. Frangos testified during trial that petitioner had not received a refund of foreign death taxes, that petitioner had not applied for such a refund, and that petitioner did not expect to receive such a refund in the future. Frangos also testified that he had spoken to Tavlarios and Foreign Attorney and his (Frangos') understanding remained the same following these conversations. Thus, based on Frangos' testimony, which we found credible in this regard, we are confident that petitioner will not receive a refund from the Greek Government of the taxes that petitioner paid to it. [19]
*471 Respondent also determined an addition to tax under section 6651(a) asserting that coexecutors failed to file timely a Federal estate tax return. Executors of estates must file a Federal estate tax return for a decedent who: (1) Is a citizen or resident of the United States, and (2) has a gross estate at death exceeding $ 600,000. Sec. 6018(a). Executors generally must file a decedent's estate tax return within 9 months after the date of the decedent's death. Sec. 6075(a). District directors or directors of service centers may grant a reasonable extension of time to file a Federal estate tax return, but the extension may not exceed 6 months unless the executor is abroad. Sec. 6081(a); sec. 1.6081-1(a), Income Tax Regs.; sec. 20.6081-1(a), Estate Tax Regs. Executors must request an extension of time to file an estate tax return by submitting an application on or before the return's due date (without taking into account the period of extension). Sec. 1.6081-1(b)(1), Income Tax Regs.; sec. 20.6081-1(b) and (c), Estate Tax Regs. Section 6651(a)(1) imposes a monthly charge equal to 5 percent of the amount of tax that should have been shown on an estate tax return, subject to *472 a maximum charge of 25 percent. See also United States v. Boyle, 469 U.S. 241, 245 (1985); Estate of Cavenaugh v. Commissioner, 100 T.C. 407, 425 (1993). No addition to tax is imposed, however, if petitioner proves that coexecutors' failure to file timely was: (1) Due to reasonable cause and (2) not due to willful neglect. Sec. 6651(a)(1); Rule 142(a); United States v. Boyle, supra at 245; Estate of Cavenaugh v. Commissioner, supra at 425; Estate of Vriniotis v. Commissioner, 79 T.C. 298, 310 (1982). Failure to file timely is due to reasonable cause if coexecutors exercised ordinary business care and prudence and, nevertheless, were unable to file decedent's Federal estate tax return within the prescribed time. United States v. Boyle, supra at 245; Estate of Cavenaugh v. Commissioner, supra at 425; Estate of Vriniotis v. Commissioner, supra at 310; sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Willful neglect means *473 a conscious, intentional failure or reckless indifference. United States v. Boyle, supra at 245. Whether coexecutors' failure to file decedent's Federal estate tax return on time was due to reasonable cause (and not willful neglect) is a factual matter to be decided based on the entire record. Estate of Duttenhofer v. Commissioner, 49 T.C. 200, 204 (1967), affd. 410 F.2d 302 (6th Cir. 1969). Petitioner bears the burden of proving that respondent's determination is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Estate of DiPalma v. Commissioner, 71 T.C. 324, 326-327 (1978). Coexecutors filed decedent's Federal estate tax return on June 28, 1990, more than 7 months after the due date of November 11, 1989. As neither coexecutor was abroad, any extension to file decedent's return was limited to 6 months beyond the due date of November 11, 1989, i.e., May 11, 1990. Coexecutors also did not request an extension until March 16, 1990, which was 4 months after the due date, and their request was not granted *474 by respondent. We do not believe that respondent's refusal to grant petitioner's request for an extension of time to file timely was an abuse of her discretion. See Estate of Wilbanks v. Commissioner, 94 T.C. 306, 313 (1990) (respondent did not abuse her discretion when she failed to grant an untimely request for extension and the taxpayer offered no plausible explanation for the untimeliness). Coexecutors and Fine, the accountant who requested the untimely extension, did not testify at trial regarding any reasonable delay for filing decedent's Federal income tax return. Although Frangos testified at trial, we find that his credible and unbiased testimony does not excuse coexecutors' untimely filing of decedent's Federal estate tax return. Petitioner could have solicited testimony from Tavlarios, who was also responsible for filing decedent's Federal estate tax return, or from Fine, who filed the untimely request for an extension. Petitioner chose not to do so. We can only assume that if petitioner had called either of these two persons as witnesses, their testimony would have been unfavorable to petitioner. Pollack v. Commissioner, 47 T.C. 92, 108 (1966), *475 affd. 392 F.2d 409 (5th Cir. 1968); Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947); see also McKay v. Commissioner, 89 T.C. 1063, 1069 (1987), affd. 886 F.2d 1237 (9th Cir. 1989) (failure of witness to testify to fact peculiarly within his knowledge suggests that testimony would have been unfavorable to him). Accordingly, we hold that petitioner has failed to prove that coexecutors' failure to file timely decedent's Federal estate tax return was due to reasonable cause and was not due to willful neglect. [20]
*476 Petitioner also argues that respondent is estopped from asserting a late filing penalty because coexecutors filed decedent's Federal estate tax return on June 28, 1990, based on their belief that respondent had granted their extension. We are unpersuaded by this argument. The record contains no evidence from which we can conclude that coexecutors reasonably relied on any representation of respondent that she had granted the request for extension. Fine also did not request an extension until after the Federal estate tax return was due, and coexecutors did not file decedent's return until after a 6-month extended period of time to file would have expired. Petitioner further argues that respondent is equitably estopped from asserting a late filing penalty because she and Weiss (on behalf of petitioner) had entered into a "binding settlement agreement". Petitioner contends that the $ 8,797.54 bill from the Holtsville, New York, office constituted respondent's offer to settle the "dispute" over interest and penalties, and Weiss' letter coupled with petitioner's check for $ 8,797.54 constituted petitioner's acceptance of respondent's offer. Petitioner's argument is unpersuasive. *477 To establish a prima facie equitable estoppel case, petitioner must show: (1) A misrepresentation or wrongful, misleading silence on the part of respondent, (2) that the misrepresentation or silence was in a statement of fact rather than an opinion or a statement of law, (3) that it (petitioner) was ignorant of the facts, and (4) that it (petitioner) was adversely affected by respondent's acts or statements. Rule 142(a); Kronish v. Commissioner, 90 T.C. 684, 695 (1988); Estate of Emerson v. Commissioner, 67 T.C. 612, 617 (1977). In determining whether petitioner has made this required showing, we bear in mind that the doctrine of equitable estoppel is applied against the Government "with utmost caution and restraint". Estate of Emerson v. Commissioner, supra at 617, and the cases cited therein. As stated by the Court of Appeals for the Ninth Circuit in Schuster v. Commissioner, 312 F.2d 311, 317 (9th Cir. 1962), affg. in part and revg. in part 32 T.C. 998 (1959) and 32 T.C. 1017 (1959): "the policy *478 in favor of an efficient collection of the public revenue outweighs the policy of the estoppel doctrine in its usual and customary context." Based on the record in this case, we do not believe that petitioner has met its heavy burden of proving that respondent is equitably estopped from determining additions to tax and interest in excess of those amounts that petitioner may have paid through its remittance of the check for $ 8,797.54. The law regarding administrative settlement offers is firmly established. The requirements of section 7121 and section 7122 are the exclusive means for respondent to make a binding settlement of civil tax liabilities. Botany Worsted Mills v. United States, 278 U.S. 282, 288-289 (1929); Estate of Meyer v. Commissioner, 58 T.C. 69, 70 (1972); secs. 301.7121-1 and 301.7122-1, Proc. and Admin. Regs. The record herein indicates that the requirements of neither of these sections were fulfilled in this case. Accord Estate of Wilbanks v. Commissioner, 94 T.C. 306, 313-315 (1990) (respondent assessed an addition to tax for late filing, even though the addition to *479 tax for late filing had previously been abated); Service Bolt & Nut Co. Trust v. Commissioner, 78 T.C. 812, 819-822 (1982), affd. 724 F.2d 519 (6th Cir. 1983) (abatement of assessment of taxes and additions to tax is not a bar to reassertion of these taxes and additions to tax). [21]
*480 We have considered all arguments made by the parties and, to the extent not discussed above, find them to be without merit. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Piraeus is a major urban center and is considered the most important seaport in Greece. Shipping companies comprise the largest industrial sector within the Greek economy, and most shipping companies are located in Piraeus. The real estate market in Piraeus is very strong with particular emphasis on the office sector.↩
2. Weiss was aware shortly after Chalos' retention that decedent's estate included property in Greece, that decedent's property was undergoing probate in Greece for Greek tax purposes, and that decedent's Greek property was being valued for Greek probate purposes.↩
3. Tavlarios assisted decedent in the handling of her financial affairs prior to her death.↩
4. The Greek Government used tables of published values to determine the value of real estate for Greek inheritance tax purposes. The values derived from these tables were not always commensurate with fair market value.↩
5. The Bureau of Taxation of Athens also issued a duplicate receipt on Oct. 11, 1989, stating that 15,129,843 drachmas less a discount of 1,512,983 for a total of 13,616,860 drachmas was paid for estate tax purposes. The duplicate receipt also named Tavlarios as one of the taxpayers.↩
6. Weiss did not know that decedent's Federal estate tax return was generally required to be filed 9 months after the date of her death; i.e., on or before Nov. 11, 1989.↩
7. The coexecutors were in the United States for most of the time between Feb. 11, 1989, and June 28, 1990.↩
8. On Apr. 25, 1989, Weiss secured an appraisal of decedent's residence that equaled the reported value.↩
9. The record does not indicate the reason why respondent's Holtsville office recorded this credit. The record also does not indicate the reason for the $ 1,197.24 difference between the original bill of $ 99,097.93, and the sum of the $ 39,103.15 credit plus the $ 50,000 payment plus the $ 8,797.54 balance due.↩
10. Respondent now concedes that a foreign death tax of 13,616,860 drachmas was paid, but argues that petitioner is not entitled to the foreign tax credit because it has not proven that the Greek Government will not refund the tax that petitioner paid to it.↩
11. The residual method is an internationally acceptable method of valuing real estate and is one of the best methods of valuation where comparable evidence is not available. The residual method of valuation subtracts the development costs from the expected sales proceeds to arrive at the value of the land. The counter performance method is a method widely used in Greece by developers in the Athens area. The counter performance method assumes that a landowner with a vacant lot transfers his property to a developer in exchange for a percentage of the completed development project. The percentage usually ranges from 35 to 50 percent.↩
12. The best use of the Real Estate was to combine its two separate lots with the Corner Lot and to develop the three lots together. Combining the Real Estate with the Corner Lot formed a larger piece of property the value of which was greater than the sum of the values of the Real Estate and the Corner Lot.↩
13. The common practice in Greece is to average the different methods that are used to appraise the fair market value of property.↩
14. Expert's valuation did not take into account the razing of the semi-derelict buildings on the Real Estate. The cost to raze these buildings, however, was negligible.↩
15. Reeps' highest educational degree is an associate's degree in liberal arts from Nassau Community College. Reeps has never been to Greece, has never appraised any property outside of the United States, and has very limited (if any) understanding of the real estate market in Greece or the practice thereto. Reeps has a residential real estate certification in New York that allows him to appraise residential (but not commercial) property for lending purposes.↩
16. Petitioner claims that Expert's opinion is unreliable because Expert made many assumptions. Although we agree that the inaccuracy of any assumption underlying a particular method can skew the results, the record adequately reflects the fact that most of Expert's assumptions were based on reliable data.↩
17. Respondent has not alleged that petitioner's payment of 13,616,860 drachmas was not the equivalent of paying $ 73,900, and we assume it was.↩
18. Respondent primarily relies on sec. 20.2014-5(a), Estate Tax Regs., which provides that a taxpayer claiming a foreign tax credit must provide satisfactory evidence that no refund of the tax is pending and that none is authorized.↩
19. To the extent that petitioner does receive a refund of these taxes, however, we note that sec. 2016 and the regulations thereunder require coexecutors to notify respondent within 30 days of petitioner's receipt thereof, and that the period of limitations under sec. 6501 would not be a bar on assessment of any Federal taxes due on the refund. See sec. 2016; sec. 20.2016-1, Estate Tax Regs.; see also sec. 6501(c)(5).↩
20. We note that coexecutors were required to file timely decedent's Federal estate tax return, and they cannot delegate their responsibility to an agent of theirs or of petitioner. United States v. Boyle, 469 U.S. 241, 249-250↩ (1985). We also note that the record does not support Fine's allegations that communication with remote beneficiaries was necessary to coexecutors' timely filing of decedent's Federal estate tax return or that coexecutors' inability to communicate with persons who do not speak English resulted in the untimely filing.
21. It is also firmly established that the negotiation of a check marked "Payment in full", or similar wording, does not create a binding contractual agreement between the Government and the taxpayer. It is equally established that "persons dealing with an agent of the government must take notice of the limitations of his [or her] authority." Boulez v. Commissioner, 76 T.C. 209, 214 (1981) (quoting Bornstein v. United States, 170 Cl. Ct. 576, 582 (1965)) (citations omitted), affd. 810 F.2d 209↩ (D.C. Cir. 1987). In this respect, we note that respondent's Holtsville office did not have the capacity to effectuate a binding settlement or compromise of a tax liability.